Nov. Term,
1856.
_____
WESTFALL
v.
HUNT.

_____

WESTFALL *v.* HUNT.

Covenant. The declaration alleged that the defendant had sold to the plaintiff a lot in *T.,* covenanting that he was seized in fee of the premises; that he had a right to sell and convey the same; that the plaintiff should have lawful possession and quiet enjoyment thereof; and that he, the defendant, would warrant and defend the title against all lawful claims. It was averred that the defendant was not so seized, and had no right to convey; that the plaintiff could not lawfully possess the premises; that the defendant had not warranted against all lawful claims, but that, at the time the deed was executed the paramount title and freehold was in a person other than the defendant; and that, by virtue of such title, the plaintiff had been evicted. Pleas traversing the averments. The facts were agreed upon as follows: The defendant laid out *T.* in 1830, on land of which he was seized in fee, and made a plat of the town, on which the lot in question is marked "Public Square." In *June,* 1830, he tendered the lot to the

commissioners appointed to locate the seat of justice of *Boone* county; and to induce them to locate the same at *T.* he offered to donate to said county thirty other lots. But the offers were not accepted: *L.* was chosen, at which place the seat of justice has ever since been. From *June*, 1830, till *February*, 1852, the lot was unoccupied and unenclosed. At the latter date it was sold to the plaintiff, who has ever since had quiet possession under the deed. In *July*, 1852, defendant filed another plat, like the first, except that he averred that the lot marked "Public. Square," in the first plat, was intended to be donated to the county of *Boone*, provided the county seat was located at *T.* and the court-house built thereon.

*Held*, that the lot is not to be considered public property merely because the owner pleased to name it "Public Square;" that there should be not only a clear intent, on his part, to devote the lot to the use of the public, but there must be an acceptance on the part of the public.

*Held*, also, that there is no evidence that the square was dedicated to the inhabitants of *T.*

*Held*, also, that the county of *Boone* cannot, under s. 2, ch. 107, R. S. 1831, claim any interest in this square.

*Held*, also, that the phrase "Public Square," when used in our statutes, as also in its popular import, refers almost exclusively to grounds occupied by the court-house and owned by the county.

APPEAL from the *Boone* Circuit Court.

DAVISON, J.—Covenant by *Hunt* against *Westfall*. The declaration states that the defendant in consideration, &c., by deed bargained and sold to the plaintiff a certain lot of ground in *Thorntown, Boone* county, (describing it); and, by the same deed, covenanted that he was seized in fee of the lot, and had a good right, &c., to sell and convey the same; that, by force of the deed, the plaintiff should lawfully possess and quietly enjoy the premises conveyed; and that he, the defendant, would warrant and defend them against all lawful claims whatsoever. It is averred that the defendant was not seized, nor had he, as alleged, good right to convey. That the plaintiff, by force of said deed, could not lawfully possess the premises; nor hath the defendant warranted them against all lawful claims, but on the contrary, at the time the deed was executed, the paramount title and freehold of the lot conveyed was in a person other than the defendant; and that by virtue of such paramount title, the plaintiff had been evicted, &c.

*Margin:*

Nov. Term, 1856.

WESTFALL
v.
HUNT.

*Friday,*
*November* 28.

Nov. Term,
1856.

WESTFALL
v.
HUNT.

In defense of the action it was pleaded, 1. That the defendant was seized and had good right and lawful authority to convey, &c.; 2. That the plaintiff was not disturbed in his possession of the premises, nor was he evicted.

The case, upon an agreement of facts, was submitted to the Court, who found for the plaintiff 99 dollars; and over a motion for a new trial, there was judgment.

The facts agreed on are these: In the year 1830, *West-fall*, being seized in fee of the land on which *Thorntown* is situate, laid out said town and made a plat of it, which was, on the 10th of *April* of that year, duly recorded. Upon this plat, the lot in question is distinctly marked, "Public Square." Commissioners appointed to locate the seat of justice of *Boone* county, met for that purpose in said county, in *June*, 1830, and *Westfall* then and there offered and tendered the lot designated "Public Square," for the purpose of erecting thereon a court-house; and further, as an inducement to the location of said seat of justice at *Thorntown*, he offered to donate to said county thirty other lots; but the commissioners refused to accept the donation, and shortly afterwards made such location at *Lebanon*, where the seat of justice of said county has ever since remained. From the time *Westfall* offered the lot to the commissioners, it was, and continued to be, until the 24th of *February*, 1852, unoccupied and uninclosed. At that date he sold and conveyed the same lot to the plaintiff, who has remained in quiet and undisturbed possession under his deed. *West-fall*, in *July*, 1852, filed another plat of said town, similar to the first, with this exception: in the latter he avers that the lot marked "Public Square" was laid out and was intended to be donated to the county of *Boone*, provided that the county seat was located at *Thorntown*, and the court-house of said county erected thereon.

The evidence shows very clearly that *Westfall*, when he made the plat, intended the lot in question to be be a donation to the county of *Boone*, on the condition that the commissioners would locate the seat of justice

of that county at *Thorntown*. In the event of such lo-
-cation, he anticipated that the court-house would be
placed on that lot, which was the only consideration he
expected to receive for his ground. Indeed, the phrase
"public square," when used in our statutes,—as also in
its popular import,—refers almost exclusively to grounds
occupied by the court-house, and owned by the county.
This being the most usual meaning of the phrase, the
intent with which *Westfall* so marked out the lot does
not seem to be doubtful.

But when this plat was recorded, there was in force a
statute entitled, "An act for recording town-plats," which
provided that, "Every donation, &c., to the public, or to
any individual, religious society, or corporation, marked
as such on the plat of the town wherein such donation
may have been made, shall be considered to all intents,
&c., as a general warranty to the donee for his use for
the purposes intended by the donor." R. S. 1831, p. 530.
Now, the county of *Boone* cannot, under this statute,
claim any interest in the "public square;" because she
refused to receive it "for the purpose intended by the
donor." Still, the question arises whether that square
is not, by virtue of its designation on the plat, dedicated
to the use of the inhabitants of *Thorntown?* In point
of fact, *Westfall* never intended such dedication. But it
is said that the record of the plat sufficiently defines the
object of the donation; and that parol proof of the in-
tention of the donor should not be allowed. In the ab-
sence of such proof, the object for which the lot was
marked out is not defined at all; because the term
"public square" expresses no definite purpose, unless,
as before stated, it is to be regarded as descriptive of
ground used and occupied for county buildings. The
proof does not vary or contradict the writing. It sim-
ply shows the object—being the consideration—which
moved *Westfall* so to designate the lot; and further, that
that consideration had failed. There is, indeed, nothing
on the face of the plat that amounts to evidence of a
dedication to the use of the inhabitants of the town.

The lot is not to be considered public property simply because the owner pleased to name it "Public Square." There should be not only a clear intent on his part to devote the land to the use of the public, but there must be an acceptance on the part of the public. *Pennington* v. *Willard*, 1 R I R. 93. *City of Cincinnati* v. *White*, 6 Pet. 431. Here there has been no such acceptance. No evidence has been adduced tending to show that the public ever used or claimed the lot. Until conveyed to *Hunt*, the appellee, it remained unoccupied. And there has been no attempt to disturb the possession taken under his deed. We are of opinion that the action is unsustained by the proof, and that the judgment must therefore be reversed.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded with instructions to the Circuit Court to enter judgment for *Westfall*, the defendant below.

*J. C. Hague*, for the appellant.