The Board of Commissioners of Greene County *v.* Huff *et al.*

No. 8860.

THE BOARD OF COMMISSIONERS OF GREENE COUNTY *v.*
HUFF ET AL.

91  333
150  547
152  181

PRACTICE.—*Striking out Paragraph of Answer.*—*Harmless Error.*—It is harm-less error to strike out a paragraph of answer, when all the facts admis-sible thereunder may be proved under the general denial which is filed.

PUBLIC SQUARE.—*Definition.*—A public square in a county seat is under-stood to be the ground upon which the court-house and other public buildings are situated.

SAME.—*Public Highway or Street Across Public Square.*—*Easement.*—*Dedica-tion.*—*User.*—*Power of County Commissioners.*—Although land be set aside for a public square, the public may acquire a highway across such land by dedication, or by user for 20 years. The county commissioners may make such dedication. (As to what facts show the acquisition of such a public highway, see opinion.) *Sims* v. *City of Frankfort*, 79 Ind. 446, and *Indianapolis, etc., R. R. Co.* v. *Ross*, 47 Ind. 25, distinguished.

SAME.—*Use of Such Way as Water-Way.*—The use of such a way as a water-way, if not incompatible with its use as a highway, will not op-erate to prevent the acquisition of the way by user as a highway.

From the Greene Circuit Court.

*A. G. Cavins, E. H. C. Cavins* and *W. H. Burk,* for ap-pellant.

*W. I. Baker* and *L. Shaw,* for appellees.

FRANKLIN, C.—This is a suit by appellees against appel-lant. The complaint is in two paragraphs.

The first paragraph is for a restraining order and an in-junction to prevent appellant from erecting a fence across a public highway and water-way running over the south part of the public square of the town of Bloomfield, in said county, upon which public square is situated the court-house, jail and other public buildings.

The second paragraph alleged that the appellant had erected said fence across and had obstructed said public highway and water-way, and prayed to have the same abated as a nuisance, and that appellant be perpetually enjoined from again ob-structing said highway and water-way, and for damages for obstructing the same.

A demurrer was overruled to the complaint.

Appellant answered in two paragraphs—a denial and a special defence. The second paragraph was, on motion of appellees, stricken out.

There was a trial by the court, and at the request of both the parties, a special finding was made and the conclusions of law stated thereon. Appellant excepted to the conclusions of law; and judgment was rendered thereon in favor of appellees.

The errors assigned in this court are:

1st. Error in overruling the demurrer to the complaint.

2d. Error in striking out second paragraph of answer.

3d. Error in the conclusions of law.

The second specification of error complained of was harmless. All the facts that could be given in evidence under the second paragraph of the answer were admissible under the general denial, which remained in.

The only questions presented and discussed by the parties are, can a public highway be created over any part of a public square, designated by the recorded plat of a town, as a public square? If so, was such highway established in this case?

As the same questions arise upon the conclusions of law as upon the demurrer to the complaint, and as the special findings state the facts fully, we think it best to refer to the facts first, which are, substantially, as follows:

In January, 1877, plaintiff Huff was the owner of the lot described in his complaint as being bounded on the south by Spring street, and on the west by Washington street in said town of Bloomfield, fronting twenty-six feet on said Washington street; that during the year 1877, he erected a large two-story brick business house thereon at a cost of $5,000, and that he has ever since owned and occupied said property and conducted the business of merchandising in the same; that at and ever since said time, plaintiff Hartsell has owned and occupied the lot described in his complaint as belonging to him, bounded on the east by said Washington street, and on the north by said Spring street, fronting sixty-six feet on

said Spring street, and that there then were and now are erected thereon a large hotel building and stables, and that the said Hartsell ever since has been carrying on the hotel business therein; that the land upon which the said town of Bloomfield is situated was sold to said county on the 22d day of April, 1824, and conveyed to an agent of said county; that the board of county commissioners caused the town to be then located as the county seat of said county, and the survey and plat thereof to be regularly recorded; that by said plat there was laid off and provided a public square for the erection thereon of a court-house, jail and other public buildings for the use of said county; that said square represented on said plat was and is bounded on the north by Main street, on the east by Washington street, on the south by Spring street, and on the west by Franklin street, each of said streets being of the width of sixty feet, and each side of said square 268 feet in length; that said square remained uninclosed until the 9th day of September, 1852, when the board of commissioners made an order of record for its enclosure, by which the fence was to be seventy-five feet from east, north and west sides of the court-house, and thirty-five feet from the south side of said court-house, and during that year the fence was built accordingly, placing a gate in the center of each side for an entrance to the court-house; by said fence the enclosure extended to the line of said public square on the east, north and west sides, and left seventy-five feet on the south side of said square uninclosed, which fence has so remained and been maintained ever since, up to the 9th day of March, 1880, leaving all of said time the said strip on the south side of said square unenclosed; that the soil of all of said square, and for a long distance south of the same, as well as east and west of the same, including the territory occupied by the said hotel of the plaintiff Hartsell and the said business house of the plaintiff Huff, is composed of loose sand, easily moved by the force of water; that the surface drainage of the east and north portions of said town all tends toward

said public square, and a considerable portion of it accelerated by a very considerable inclination of the ground toward said square, so that in heavy rains large quantities of such drainage are brought down said Spring, Washington and Franklin streets; that at the time said town was laid out there was a hollow of considerable depth having its origin in a point near the central portion of the southern boundary of said square in Spring street as said street is represented on said plat of said town, and extending south through the southern boundary of said town, more than a quarter of a mile. This was then, and ever since has been, of such depth as to render said Spring street impassable at said point, and to prevent travel upon all cross streets between Washington and Franklin streets south of the origin of said hollow; that this hollow, at the time of the laying out of said town, was, at its northern extremity or origin, of no considerable width, but for fifty years last past the action of the surface drainage in wearing away the banks thereof has so increased the same that it has extended westward so as to encroach upon and destroy half of the width of said Franklin street from the center of Spring street south, and has extended east to the northern prolongation of the western line of said Hartsell's hotel, which line is sixty-six feet west of the western line of said Washington street; and has also by like gradual encroachments extended northward, so that at the beginning of this action, its northern boundary, somewhat irregular in form, is about forty feet north of the southern boundary of said public square, as defined by said plat of the town, and said northern line of said hollow is within said platted boundary of said public square from a point seventy-five feet west of the east boundary of said square to the western boundary thereof; that during all the time said square was uninclosed, the public continuously and daily used as many as three well defined routes for travel and highway purposes across the territory of said square as originally platted; that one of these routes was somewhat circular in shape and lay north and around the head of said

hollow, and through and across the southern portion of said plat of said square and formed the connection between the east and west ends of said Spring street, where said street is broken by said hollow; that the travel on said route has at all times been very considerable, it being the shortest line of travel between said east and west portions of said town lying south of said public square, and being the only road south of said square which could or can be travelled between said Washington and Franklin streets; that this route, on the 9th day of March last, and for more than twenty-five years prior thereto, was on and over the narrow strip of ground lying between the northern boundary of said hollow and the said south fence of the public square, and was about an average width of twenty-five feet, except at the east end thereof, where it extends south for a distance of seventy-five feet, it being the space lying east of the eastern bank of said hollow and between that and said Washington street. All of which space south of the fence of said square the public during all of said time were accustomed to, and habitually did, travel over; that said fence was originally built and has ever since been maintained at the north edge of said travelled way, and was so built and maintained for the purpose of allowing the public to travel on said route between said Washington and Franklin streets.

In the beginning of the travel around the head of the hollow the road was some twenty-five feet south of its present line, and in more of a circular shape, which space is now mostly occupied by the hollow. The road was gradually pushed to the north by the encroachments of the hollow, but for more than twenty-five years last past has held and occupied the present place, by greater vigilance being exerted in preventing the further breaking in of the bank of the hollow, and during all that time has been daily and continuously used by the public as a highway, without objection from said board, and without asking or obtaining permission from said board;

that ever since the laying out of said square the commissioners of the county have from time to time expended money and labor in the preservation and protection of the banks of said hollow, by building dams, embankments, planting trees, and filling in with earth and other materials for that purpose; the travelled line north of said banks being all the time left open, it being all the time necessary to preserve and protect said banks in order to insure the safety of the court-house and other public buildings; that in the year 1838 the road hands of the district were called out by the supervisor, and they, with the citizens generally, worked a day or two on the banks of said hollow to protect the same, the said hands receiving credit therefor as work done on the highways; no other work has been done thereon by the public; that its banks have been protected by the county commissioners, except as aforesaid; that upon two or three occasions in the last twenty years sudden descents of rain have caused breaches in said banks, extending into said road so as to materially but not entirely obstruct travel thereon, which were repaired by the county, the road supervisor refusing to do so; at other times holes were washed out in the road, and the safety of the embankments threatened thereby, which were repaired by the county's agent; that in order to protect the banks of the hollow the county, at a large expense, constructed a large and lengthy channel or flume, paved with stones, beginning at the northwest part of the hollow, near the intersection of the road in question with Franklin street, and leading down the bank into the hollow in question; that the water flowing down Washington street from the north, and Spring street from the east, has for fifteen years last past been collected so as to flow into the road in question at its eastern end, and flow west along and over said road to said channel or flume, where it united with the water flowing down Franklin street from the north, and all passed off down said flume into the hollow; that embankments were maintained for the purpose of collecting said surface water at the head of said flume, so that it might pass off

into the hollow without wearing away the banks thereof; that on the 9th day of March, 1880, appellant, by order of record, caused its agent to erect a fence on the line of the original plat of said public square, enclosing said south side thereof, which up to that time had remained unenclosed and used as aforesaid, thereby obstructing all travel along and over the road in controversy; that said fence has been ever since and now is so maintained, and thereby prevented the flow of said surface water from said Washington and Spring streets into said road, and over the same to the head of said flume; and said obstruction to said flow of water so remained until the commencement of this action, and until the 22d day of March, 1880, when the road supervisor opened the same so as to let the water flow under said fence and pass over said road; that the permanent maintenance of the fence across said road would materially impair the convenience of access on the part of a considerable number of those who have been accustomed to patronize the hotel of plaintiff Hartsell and the store of plaintiff Huff, and would injure the trade of both of said plaintiffs; and that by the erecting and maintaining of said fence, said Huff has been damaged by loss of trade in the sum of $5; and said Hartsell has also been damaged in the sum of $5; that by the maintenance of said fence permanently as aforesaid, the said property of the said Huff will be injured in value $500, and said property of said Hartsell in the sum of $300; that by preventing the flow of the said surface water along and over said road as aforesaid, in the manner in which the same was obstructed as aforesaid, and opening no new channel therefor, the same would flow upon the said Hartsell property and endanger the foundation thereof and damage the same very greatly; that no petition or other proceeding for the vacation of said road in controversy has ever been introduced or filed before said board of commissioners.

We have thus fully stated the substance of the special findings of the court, which fully state the facts, in order to

comprehend the questions arising upon the exceptions to the conclusions of law, as well as the demurrer to the complaint.

As conclusions of law the court substantially stated:

1st. That the road in controversy is a lawful public highway.

2d. That the obstruction of the same by the defendant was without authority of law, and was illegal and wrongful as against the public and the plaintiffs.

3d. That the plaintiffs have a right to maintain this suit and recover for the injuries, etc.

4th. That they ought to recover the damages, etc., which they have sustained, as named in findings.

A public square, in a county seat, is understood to be the ground upon which the court-house and other public buildings are situated. *Westfall* v. *Hunt*, 8 Ind. 174. And the designation of a piece of ground in the recorded plat of a town as a public square, does not make it so, unless it is accepted and used as such. *Westfall* v. *Hunt, supra.*

A public highway is a way over which all persons have a right to pass; and that right may be acquired, among other ways, by the dedication of the owner of the soil, or by the uninterrupted user of the public for twenty years.

The said town of Bloomfield was located as the county seat of Greene county, Indiana, on a tract of land purchased by the county. The commissioners thereof caused the town to be platted and the plat recorded, in which the public square in controversy was designated; and as the agents of the county, being the custodians of its property, they caused a court-house and other public buildings to be erected on said public square. This square remained unenclosed until the year 1852, twenty-eight years, and in the meantime the public had established a well defined way of travel around the head of said hollow, and across the south end of said public square. When said commissioners enclosed so much of said public square as aforesaid, as was thought needful for the use of the public buildings thereon situated, the court specially found that, for the purpose of leaving a pass-way around

the head of said hollow, they left the remainder of said platted public square unenclosed, in which condition it remained until the spring of 1880, the public all the time using it as a public highway.

Do these facts establish an express dedication from the owner, or a presumptive dedication by user for twenty years, or any right whatever for all persons to travel over said way?.

It is insisted by appellant's counsel that, as a matter of law, a public highway can not be established across any part of the public square, because it had already been set apart for a public purpose, and that a right therein can not be dedicated to, or acquired by, the public for any other purpose.

The question is presented more fully by the exceptions to the conclusions of law than the demurrer to the complaint.

The direct averment in the complaint, that there was a highway there, and that it had existed for more than twenty years, so far as this question is concerned, and no other is presented or discussed in the case, is sufficient to make the complaint withstand a demurrer; under it the plaintiffs could. prove the establishment of the right of way by any of the means known to the law. *Jackson* v. *Smiley*, 18 Ind. 247.

The length of the complaint appears to have been required in order to state all the facts in detail with their surroundings, for the purpose of establishing special damages to enable the plaintiffs to maintain the suit. Nominal damages were found, to test the question.    •

The facts found by the court establish beyond controversy that the public had continuously, without interruption, used the road in dispute as a highway for more than twenty-five years preceding the obstruction complained of, with the knowledge of and without any objection from appellant. Its proximity to the court-house, and running between the court-house and the head of the hollow, the banks of which appellant was assiduous in protecting from further wash, in order to preserve the public buildings, render it impossible for appellant to have been ignorant of its use by the public as a highway.

If the easement of a public highway can be established by user over a public square, the provisions of the 5035th section of the R. S. 1881 have been complied with, which section reads as follows: "All public highways which have been or may hereafter be used as such for twenty years or more shall be deemed public highways." In this statute there is no exception in favor of public grounds.

In the case of *Hart* v. *Trustees, etc.*, 15 Ind. 226, it was held upon a special finding of the court, that the uninterrupted use of a road by the public continuously for twenty years constituted it a public highway of an undefined width, and it was limited to the width it occupied at the end of the twenty years. And to the same effect is the case of *Epler* v. *Niman*, 5 Ind. 459.

In the case of *State* v. *Hill*, 10 Ind. 219, it was held that a less period—even four or five years—was sufficient to raise a presumption of dedication. And it is therein further added: "Indeed, the weight of authority seems to be, that the use of land for a highway for such a length of time that public accommodation and private rights might be materially affected by an interruption of the enjoyment, would be evidence that the owner intended a dedication to the public. *Jarvis* v. *Dean*, 3 Bingh. 447; 2 Greenl. Ev., section 662." *Fisher* v. *Hobbs*, 42 Ind. 276.

There are facts also found by the court which tend strongly to show that appellant intended to dedicate the ground in dispute to the public for a highway. It laid off the public square with a street and public highway on each side of it for convenient access to the court-house and other public buildings to be situated thereon. Spring street, upon the south side thereof, was impassable, and continued for twenty-eight years to get worse, by which time three well defined public roads were used over said public square. Appellant then, in 1852, fenced two of them up, and left the one in dispute open as the only means of a street and public highway on the south side of said public square. And the court further finds that

.appellant left said road uninclosed outside of the fence on the south side of said.public square for the purpose of its being used as a public highway, thereby, so far as it could, dedicating said ground to the public as a highway, and which was accepted and used as such continuously, and without objection or interruption, for the succeeding twenty-five years, and until the time of the obstruction complained of. Is this sufficient? See *Hays* v. *State*, 8 Ind. 425 ; *Summers* v. *State*, 51 Ind. 201.

In the latter case, it was held that a public highway may be established by "dedication arising by presumption from a continued use of the place for a considerable period of time by the public as a public highway, with a knowledge thereof by the owner, and without objection on his part," meaning, doubtless, for a period of time much less than twenty years; for, in the former case, it was held that twenty years user of a road as a public highway is, under the statute, an absolute bar; and, in the latter case, it was further held that " the continued use of it by the public for a considerable length of time is sufficient evidence of acceptance on the part of the public." This does not require the road to be worked by the public.

To constitute a highway by user, the use must not only be uninterrupted and continuous for twenty years, and with the knowledge of the owner of the land over which it passes, but must be by his consent, or without his objection. *Sullivan* v. *State*, 52 Ind. 309 ; *Summers* v. *State*, *supra*.

" It is a general rule that to constitute a valid common-law dedication, there must be an intention to.dedicate, and an act on the part of the owner, and an acceptance on the part of the public. This general rule is, however, subject to modification, that if the owner of a servient estate intentionally or by gross negligence leads the public to believe that he has dedicated the premises to public use, he will be estopped from denying the dedication to the prejudice of those whom he may have misled." Herman Estop., section 521 ; *City of Co-*

*lumbus* v. *Dahn,* 36 Ind. 330; *Wilder* v. *City of St. Paul,* 12 Minn. 192; *Mansur* v. *State,* 60 Ind. 357; *Mauck* v. *State,* 66 Ind. 177.

In the last case referred to the following language is used: "The unopposed use by the public of a road over the land of an individual who is cognizant of the fact, for a period of twenty years, would give the public an absolute right against such individual to have such road kept open for the use of the public."

In the case at bar, the court found that there was an intention on the part of appellant to dedicate, that there was an act of dedication by fencing up the balance of the public square and leaving the road unenclosed, and that there was an acceptance by the public by a continuous and uninterrupted user for more than twenty-five years, and that public accommodation and private rights would be materially affected by an obstruction of the highway.

Appellant's counsel insist that it used the road as a waterway, and that no use of it by the public as a highway could establish it as a highway. True, appellant used it for fifteen years last past as a water-way, and occasionally repaired it to preserve the banks of the hollow, but that use of it in no way interfered with the use of it, at the same time, as a public highway. It rather appears that appellant has been using a public highway as a water-way, instead of the public using a water-way as a public highway; the original and primary use was as a road, the use as a water-way being incidental. Public streets, as highways in towns and cities, are universally used as water-ways. But it certainly can not be correctly said that such use of them destroys or vacates their use as public highways, or in any manner interferes therewith.

The land upon which the town was located belongs to the county; appellant as its agent had the charge and management of the public square, and had the right to appropriate any part of it to any public use consistent with the necessities and

convenience of the public buildings thereon situated. 1 R. S. 1876, p. 352, sec. 13. *Hayward* v. *Davidson,* 41 Ind. 212; *Haag* v. *Board, etc.,* 60 Ind. 511 (28 Am. R. 654).

Then, could appellant dedicate the premises to the public to be used as a highway, or could the public acquire such easement by user for twenty years?

The case of *Prudden* v. *Lindsley,* 29 N. J. Eq. 615, is somewhat similar to the one under consideration, and, we think, in point upon these questions. That was a proceeding by injunction to prevent the obstruction of a highway over public grounds. And in that case the court held that the trustees were the legal owners of the land, and a discretion was vested in the trustees as to how it should be made to best subserve the purpose intended; and in the range of this discretion their acts were lawful and binding; and if the highway claimed by the complainant could be laid out by the trustees in furtherance of their trust, then their dedication is valid. *Rex* v. *Leake,* 5 B. & Ad. 469. And the court further adds: "It can not be asserted, as a principle of law, that the devotion of part of a school plot to the purposes of a highway, is inconsistent with the trusts impressed upon it, for, manifestly, circumstances may be imagined where a public road would be convenient, or even necessary, for the enjoyment of the school; and, therefore, the question whether such dedication can be made, is one of fact, to be determined by the conditions of each case." And again, on p. 618: "A stranger, by an adverse possession as against a trustee, continued for the requisite period of time, may bar both the legal estate of the trustee and the equitable interest of the *cestui que trust.* 3 Washb. Real Property 163. * * * That the original trusts were in favor of the public, or a part of it, can not prevent the effect of the prescription. The power of the public to impress a particular use on its own property would seem to be less deniable than its power so to affect private estates. If the earlier and the later public easements are consistent,

then the first interposes no obstacle to the acquisition and enjoyment of the second; if they are inconsistent, the use of the one and disuse of the other continuously for twenty years, must indicate the public election which to enjoy. * * * Therefore an uninterrupted and adverse public use of the highway for over twenty years would establish the easement, notwithstanding the prior trust."

In the case of *Tyler* v. *Wilkinson*, 4 Mason C. C. 397, STORY, J., said : " By our law, upon principles of public convenience, the term of twenty years of exclusive uninterrupted enjoyment has been held a conclusive presumption of a grant or right. * * * The presumption is applied as a presumption *juris et de jure*, wherever by possibility a right may be acquired in any manner known to the law."

On the question of acceptance there is a distinction recognized by Greenleaf on Evidence, vol. 2, section 662, where it is said : " It does not follow, however, that, because there is a dedication of a public way by the owner of the soil, and the public use it, the town or parish or county is therefore bound to repair. To bind the corporate body to this extent, it is said that there must be some evidence of acquiescence or adoption by the corporation itself." And this explains a number of the authorities saying that the dedication must be accepted by some constituted authority. This is only necessary when questions of liability to repair are involved.

No question of fact is found by the court having a tendency to rebut the presumption of dedication.

In the case of *Sims* v. *City of Frankfort*, 79 Ind. 446, it was held that a private individual could not acquire a title to a part of a public street by mere permissive possession for twenty years; and the following quotation is approvingly made from Judge Dillon's work on Municipal Corporations : "As respects property not held for public use, or upon public trusts, and as respects contracts and rights of a private nature, there is no reason why such corporations should not fall

within limitation statutes, and be affected by them. For example, in an action on contract or for tort, a municipal corporation may plead or have pleaded against it the statute of limitations. But such a corporation does not own and can not alien public streets or places, and no laches on its part or on that of its officers can defeat the right of the public thereto; yet there may grow up, in consequence, private rights of more persuasive force in the particular case than those of the public. It will, perhaps, be found, that cases will arise of such a character that justice requires that an equitable estoppel shall be asserted even against the public, but if so, such cases will form a law unto themselves, and do not fall within the legal operation of limitation enactments."

It was further held, in said case, that "There can be no permanent rightful private possession of a public street. The obstruction of a public street is a nuisance, and as such is punishable by indictment. * * No man can acquire a right to maintain a public nuisance by prescription. Each day's continuance of a nuisance may be an indictable offence."

In that case the appellant had built his front fence out a little upon the street, at a cost of $35, and had constructed a pavement in front thereof, and the court, in discussing the question of estoppel, held that the line of his fence was not established by the corporate authorities, but had been fixed by appellant, and therefore he could not have been misled by the municipality in that respect. "Acting under leave and license is very far from acting under orders or directions. The question whether there can in any case be an equitable estoppel by the mere passive inaction of the municipal officers is a very doubtful one. We need not here discuss or decide it. * * * He can not by such an improvement as that shown in his complaint acquire title to a public street. * * * Whatever may be the rule where it appears that great expenditures have been made and acts done for which compensation can not be fully made, it is plain that where

there has been a small expenditure of money for which full compensation can readily be made, title can not be acquired in a public highway by estoppel."

We think the case under consideration differs very materially and is easily distinguished from the aforesaid case.

Here a private individual is not seeking to acquire title to, or to occupy any part of, the public grounds. Appellants are only seeking the right for the public to use, as a public highway and water-way, that part of the public grounds which the municipal authorities had more than twenty years previously set apart for such purposes, and which had been, for that time, so used by the public and kept in repair by said municipal authorities.

While it is a correct principle of law that municipalities, while in the discharge of public trusts, are not bound by the ordinary statutes of limitation, so that a private individual can, by their laches, acquire by user a fee simple title to public property under their charge, and, perhaps, that they could not by grant alien or convey such public property to be used for individual purposes, still they have the control, to some extent, as to how such property shall be used for public purposes. The corporate authorities of a town or city have the right to grant the right of way over public streets to regular railways, or street railways, as quasi-public institutions, as against the ordinary use of such streets by the public as public highways, but not a fee simple therein as against the abutting lot-owners who own the fee simple to the center of the streets. And when these rights of way are once regularly granted by the proper authorities, and investments have been made upon the faith of such grants, these same authorities can not revoke such grants and stop such use of such public streets; and the continuous user of such streets for such purposes for twenty years, or even a shorter period, would be evidence of such grants, and strengthen the claim thereto.

In the case of the *Indianapolis, etc., R. R. Co.* v. *Ross,* 47 Ind. 25, where the railroad company was sued for an assess-

The Board of Commissioners of Greene County *v.* Huff *et al.*

ment for the improvement of a street, it claimed a fee simple by user in the part of the side of the street occupied by the company; this court held that it could not, by user, acquire a fee simple title to any part of a public street. But the court further said: " Were it a question whether, by the use alleged, the company had acquired a right of way, a different point would be presented."

In the case at bar, the county is the owner in fee simple of the public square, and that fee simple extends to the center of the streets on each side thereof. And while it is dedicated to the use of the public for a county seat, its agent, the board of commissioners, has charge of the manner in which it shall be used by the public, consistent with the object of its dedication. Hence they erected near the center of it a court-house, on the east part a jail and sheriff's residence, on the north a public well, on the southeast a coal and wood-house, and enclosed by a fence as much of it as they thought necessary for the convenience of the public buildings and the ornamentation of the grounds. The plat of dedication shows that it was the original intention to have a street and public highway on each side of said public square. The street on the south being impassable, the commissioners, when they enclosed the square, left a space on the south side unenclosed, to be used as a public highway and water-way, in the place of said impassable street. They placed a gate in the center on each side of the public square as the means of access to the court-house and other public buildings; and the improvements of the town have been made in reference to this condition of the public square. Now, after so long a user and large investments upon the faith of the right thereof, have the commissioners, without making Spring street passable and furnishing a safe water-way to dispose of the surplus surface water, the right to close up the highway and water-way on the south side of the public square, to the great damage and injury of adjacent property owners?

The public highways around the square, and for foot pas-

sengers across the enclosed square from the gates in the center of the sides to the court-house and other public buildings, are necessary conveniences, in order to have access to the public buildings by the public, and no less so on the south side than either of the other sides.

We think the public has elected, by the acts of the commissioners and the acceptance of the public, that this part of the platted public square should be appropriated to the public use, and that said use is not inconsistent, but in perfect harmony, with the use of the square as a county seat, and that this case falls within the rule laid down in the New Jersey case, *supra*.

If the public and the appellees have not acquired an absolute technical right by prescription or grant, such investments and improvements have been made that a closing of said highway and water-way would work great damage and injury to appellees and the public, for which compensation could not readily be made without improving Spring street so as to make it passable, and furnishing a sufficient water-way. We think the case also comes within the rule laid down by Judge DILLON, *supra*, " that cases will arise of such a character that justice requires that an equitable estoppel shall be asserted even against the public." And we do not think that this conclusion is in conflict with the principles held in the case of *Sims* v. *City of Frankfort, supra.*

The court below did not err in its conclusions of law. The judgment below ought to be affirmed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment of the court below be and the same is in all things affirmed, with costs.

Filed Nov. 22, 1883.