**BOARD OF COMMISSIONERS OF MONROE COUNTY, Indiana, Appellant (Defendant Below),**

**and**

**Tommy J. Hacker, (Defendant Below),**

v.

**Melissa HATTON, Appellee (Plaintiff Below),**

**and**

**Jerry E. Hatton and Anna M. Hatton, (Plaintiffs Below).**

No. 1–581A168.

Court of Appeals of Indiana, Fourth District.

Nov. 2, 1981.

Rehearing Denied Dec. 4, 1981.

Robert L. Baker, Baker, Barnhart & Andrews, Bloomington, for appellant (defendant below).

Bunger, Harrell & Robertson, Bloomington, for defendant Hacker.

Thomas A. Berry, Barbara B. Benson, Berry, Bridges, Benson & Benson, Bloomington, for appellee (plaintiff below).

YOUNG, Judge.

After a jury trial, plaintiff Melissa Hatton obtained a judgment against defendant Board of Commissioners of Monroe County for the county's alleged negligence in failing to open the view of the curve in question by failing to trim the weeds and natural growth.[1] The county appeals raising the following issues:

1) Whether plaintiff failed to establish:
   a) that the county had a duty to maintain the adjacent area beyond the road;
   b) that the breach of any duty owed by the county to the plaintiff was the proximate cause of her injuries; or
   c) that the plaintiff was not contributorily negligent once an alleged presumption of contributory negligence arose.

2) Whether the trial court erred in refusing the county's instruction on the issue of proximate cause.

We reverse.

The evidence indicates that on May 26, 1979, Hatton, a fourteen year old, was riding her bicycle on the county's East Farr Road toward her home when she glanced back and noticed two vehicles approaching. Hatton's parents had previously instructed her to get off the road surface and stop until any approaching vehicles had passed. Because there was no room to get off Farr Road on the right side, Hatton crossed over to the other side, reaching it at the inside of the curve, got off the road surface and stopped. At this point one of the cars which had been approaching from the rear passed. She glanced back to check the position of the second car and as she turned back around she saw Hacker's truck within a few feet of her. Hacker's truck hit Hatton throwing her some ten to fifteen feet. Hacker had not seen Hatton until shortly before impact because his vision was blocked going into the curve by natural growth, which came within six inches to a foot of the road and reached a height of some ten feet. Hatton suffered severe leg injuries which resulted in lengthy hospitalization, permanent impairment to her right leg, and disfigurement.

Hatton filed a complaint against the county for these injuries claiming that it was negligent in maintaining the growth in the adjacent area of the curve which was the proximate cause of the accident. At the close of the evidence, the county filed a motion for judgment on the evidence claiming that Hatton failed to show a duty owed to her, a breach thereof, or that the alleged breach was the proximate cause of her injuries. The court denied the motion and the jury returned a verdict in favor of Hatton.

The county first argues that the trial court erred in not granting its motion for judgment on the evidence and that there was insufficient evidence to support the verdict. It contends that Hatton failed to establish that the county had a duty to maintain the area where the accident occurred which was the proximate cause of her injuries. We agree. Hatton failed to establish a prima facie case on a statutory duty and failed to produce sufficient evidence to support the verdict on the common law duty as instructed.

The burden of proving negligence lies on the plaintiff. *Hi-Speed Auto Wash, Inc. v. Simeri* (1976) 169 Ind.App. 116, 346 N.E.2d 607. Before a defendant can be held liable for negligence it first must be shown that the defendant owes a duty to the plaintiff. *Roberts v. Indiana Gas & Water Co.,* (1966) 140 Ind.App. 409, 218 N.E.2d 556. In the absence of a duty, there can be no breach of a duty and no negligence or liability based upon the breach of duty. *Barbre v. Indianapolis Water Co.,* (1980) Ind.App., 400 N.E.2d 1142. If a duty and breach thereof is proven, plaintiff must also establish the negligence as the proximate cause of the injury. *See, Candlelight Homes Inc. v. Zornes,* (1981) Ind.App., 414 N.E.2d 980. Therefore, Hatton must have affirmatively shown that the county owed her a legal

---

1. The jury returned a verdict against Melissa's parents on their complaint which was not appealed. In addition, defendant Tommy Hacker, defendant-driver of the truck which hit plaintiff, does not participate in this appeal.

duty to open the view of the road by trimming the natural growth and that the breach thereof proximately caused her injuries.

The county contends that there is no evidence which would establish that it owed this duty to Hatton. Hatton argues that the facts reveal two sources of law which would impose this duty upon the county. Initially, she claims that the county had a common law duty either through its ownership and assumed maintenance of the area or through a more general duty to protect users of its highways from inherently dangerous conditions existing on those highways citing *Board of Com'rs of Delaware County v. Briggs*, (1975) 167 Ind.App. 96, 337 N.E.2d 852. She also alleges that this duty is imposed under Ind.Code Section 32–10–4–2.

■ The duty to protect highway users from dangerous conditions on highways may or may not extend to obstructing growth beyond the boundaries of the county's highways or rights of way. If the duty does extend to this situation, the court may not have erred in submitting this case to the jury. However, we need not decide this question because the instruction given, without objection, imposed this duty only if the plaintiff established that the county either owned the area or had assumed responsibility for its maintenance. Once the instruction is given to the jury it becomes the law of the case when no objection is made. *D.D.R. v. Davis*, (1980) Ind.App., 411 N.E.2d 722. Thus, the question of whether the evidence is sufficient to sustain the verdict on this theory must be evaluated upon the basis of the law as set out in the instruction.

The jury instruction on the county's common law duty to maintain adjacent areas of its roads specifically required Hatton to prove that the county either owned the adjacent area or had assumed responsibility for the maintenance of the adjacent area where the accident occurred.

■ Hatton offered no evidence that the county owned the adjacent area. The county, however, offered evidence indicating that neither a record of ownership of the adjacent areas nor any legal description of the road itself could be found which is a common situation for highways established by use. Where boundary lines have never been established by competent authority, the width of the road established by use is limited to that portion actually travelled and excludes any berm or shoulder.[2] *Evans v. Bowman*, (1915) 183 Ind. 264, 108 N.E. 956; *Anderson v. City of Huntington*, (1907) 40 Ind.App. 130, 81 N.E. 223. Because no evidence supports a reasonable inference of county ownership of the adjacent areas, any liability based upon the common law duty must depend upon evidence supporting a reasonable inference of an assumption of the duty to maintain the area.

The evidence revealed that the county policy was to mow an area about three feet wide along the side of Farr Road at least twice a year. The county highway superintendent testified that "the county had not necessarily cut everything on each side of Farr Road", but that "it had mowed each side of Farr Road." He further suggested that the daily responsibility, if one existed, would be mowing an area that would interfere in any way with the travelled portion of the road if the weeds were within the width of the mower. Testimony from local residents, directed to the actual scene of the accident, indicated that the growth had never been cut by anyone, including the county, since at least 1972.

■ Indiana recognizes that a duty may be imposed upon one who by affirmative conduct or agreement assumes to act, even gratuitously, for another to exercise care and skill in what he has undertaken. *Clyde E. Williams & Assoc., Inc. v. Boatman*, (1978) Ind.App., 375 N.E.2d 1138. However, in such a case, precisely what has been

2. I.C. 8–20–1–15(a) also provides:

"All county highways heretofore laid out according to law, or used as such for twenty (20) years or more, shall continue as originally located and of their original width, respectively, until changed according to law."

undertaken must be determined because liability is no broader than the actual duty assumed. *Ainey v. Realton Amusement Co.,* (1925) 135 Wash. 56, 236 P. 801, 41 A.L.R. 263; *see* 39 AM.JUR.2d *Negligence* §§ 361, 745.

There is no evidence of any agreement. The only evidence of affirmative conduct is that the county had mowed some of each side of Farr Road for the purpose of removing weeds within the mower's width which might interfere with the travelled portion. Hatton argues that this is sufficient to impose a duty to maintain all adjacent areas of the road and to open the view of the curve by trimming anything necessary for this purpose. She further asserts that the fact that the curve in question had not been mowed is only significant to the extent it indicates the county's lack of due care. While this statement may be true when a duty has already been established, it is not the case when liability is being founded upon an assumed duty. In this case, it bears significantly on the question of the county's legal duty (what was assumed) which *necessarily precedes* the question of due care.[3]

Accepting the testimony that the county had never mowed the curve as fact, as Hatton does in her brief, it shows the county did not undertake to mow or control this curve. The county's affirmative conduct did not evidence a voluntary undertaking to mow any more than that which was performed. A duty of the nature and extent which would be necessary to sustain Hatton's verdict (to clear the view all the way back for many feet) was far beyond the scope of the county's undertaking to mow a limited area and finds no support in the record. Therefore, no liability can be found upon a common law assumed duty to maintain this curve.

3. There must be a duty owed before a defendant is legally obliged to exercise reasonable care so as not to cause injury to the plaintiff.

4. The statutory duty under I.C. 8–17–14–1 which requires the county to cut undergrowth and weeds within county highway rights-of-

Even assuming that the county gratuitously assumed responsibility for maintaining this curve, the situation presented involves a case of non-feasance, a complete omission or failure to perform, rather than misfeasance, a negligent performance. We believe, as other jurisdictions have held, liability for non-feasance *in* connection with a gratuitous or voluntary undertaking may arise only where beneficiaries have relied on its performance. *See, e. g. Chisolm v. Stephens,* (1977) 47 Ill. App.3d 999, 7 Ill.Dec. 795, 365 N.E.2d 80 (and cases cited therein); *Johnson v. Souza,* (1961) 71 N.J.Super. 240, 176 A.2d 797, app. den. 36 N.J. 598, 178 A.2d 388; *Florence v. Goldberg,* (1978) 44 N.Y.2d 189, 404 N.Y. S.2d 583, 375 N.E.2d 763. *See also Geremia v. State,* (1977) 58 Hawaii 502, 573 P.2d 107. Under those circumstances reliance lies at the very heart of the cause and is a prerequisite to liability. *Chisolm, supra* 365 N.E.2d at 86. Hatton's testimony indicates that she knew of the visibility problems on the curve and the condition of the growth. The county did nothing to aggravate the situation or make the curve more dangerous. There is no evidence that Hatton or anyone else had any knowledge of prior maintenance of the curve by the county. The requisite reliance is simply not present in the instant case. Therefore, the county is not negligent, as a matter of law, upon the common law theory as instructed.

The county further argues trial court error in not granting its motion for judgment on the evidence because the verdict could not be supported by a statutory duty. The jury was instructed on the county's statutory duty to trim weeds, etc. under I.C. 32–10–4–1 and 32–10–4–2[4]:

"At all times material to this lawsuit, certain statutes were in full force and effect in the State of Indiana which read, in pertinent part, as follows:

way between July 15 and September 1 of each year is inapplicable because the accident occurred on May 26. The alleged statutory duty was based on I.C. 32–10–4–2 which is set out in the body of the opinion following this discussion.

All hedge or live fences along the line of any highway within the State of Indiana shall be cut and trimmed down to a height of not to exceed five feet, once in each calendar year in all cases where hedges or live fences, or any other natural growths, are found at a highway intersection, or adjacent to any curve where the view of the highway may be intercepted. Such hedges or other growths shall be trimmed and maintained at a height of not to exceed five feet above the level of the center of the traveled road bed in the highway adjoining, and such altitude shall be maintained throughout the year for a distance of fifty feet where the obstructions consist of natural growths, except trees ... "

It shall be the duty of the county highway superintendent, or other proper officer in control of the maintenance of said highways, between the first of January and the first day of April of each year, to examine all natural growths along the highways in their respective jurisdictions; and, if there shall be any growths or obstructions along such highways which have not been cut, trimmed down, and maintained to the height of not to exceed five feet in the calendar year immediately preceding the first day of January, they shall give the owners thereof written notice to remove any obstructions or growths as herein described, such notice to be served by reading the same to said owner or owners, or by leaving a copy of the same at his or her usual place of residence; and, if such owner or owners do not proceed to remove any such obstructions or growths within ten days thereafter, then such county highway superintendent shall immediately cause such obstructions or growths removed down to the height of not to exceed five feet, and burn all brush trimmed therefrom, and all expenses so incurred shall be assessed against and shall become a lien upon such lands ...

If after considering all of the evidence in this case, you find by a preponderance of the evidence that the Monroe County Commissioners, or their employees, failed to perform the duties imposed upon them by this statute, and that such failure was without any legal excuse or jurisdiction, you may find that the Monroe County Commissioners were negligent. And, if you further find by a preponderance of the evidence that such negligent omission on the part of the County Commissioners was a proximate cause of any damages sustained by the plaintiffs, you may return a verdict against the Commissioners and in favor of the plaintiffs for such money damages as you find the plaintiffs have proven by a preponderance of the evidence they are entitled to recover."

■ The county contends that the trial court erred in giving this instruction because it failed to clarify the meaning of "height not to exceed five feet" and thereby allowed the jury to decide what duty was imposed. Hatton argues that any error concerning the content or clarity of this instruction is waived under Ind.Rules of Procedure, Trial Rule 51(C) because the county failed to object to the instruction at trial. While we recognize this statement as the law, *see D.D.R., supra,* it does not amount to a waiver of a right to appeal an erroneous ruling on a motion for judgment on the evidence. *State v. Totty,* (1981) Ind. App., 423 N.E.2d 637, 642.

■ To determine if the court erred in submitting this case to the jury, we must examine the statute to determine what duty is imposed. The trial court must determine as a matter of law the specific requirement, the absolute standard of conduct or absolute duty, to which the defendant is obligated to conform under the statute. *Reuille v. Bowers,* (1980) Ind.App., 409 N.E.2d 1144. We must then consider the evidence most favorable to the plaintiff along with all reasonable inferences to determine if there is any evidence to support the essential elements of her claim: a

breach of that duty and that breach as the proximate cause of her injuries. Ind.Rules of Procedure, Trial Rule 50. *Hendrickson & Sons Motor Co. v. OSHA,* (1975) 165 Ind.App. 185, 331 N.E.2d 743.

Hatton cites I.C. 32–10–4–1 and 32–10–4–2 as imposing a duty upon the county to trim any natural growth to the height necessary to open the view of the curve. In pertinent part, I.C. 32–10–4–1 provides:

"All hedge or live fences along the line of any highway within the State of Indiana shall be cut and trimmed down to a height of not to exceed five [5] feet, once in each calendar year in all cases where hedges or live fences or other natural growths except trees, connect with or are found . . . adjacent to any curve where the view of the highway may be intercepted . . . such hedges or other growths shall be trimmed and maintained at a height of not to exceed five (5) feet above the level of the center of the traveled roadbed in the highway adjoining said fences . . ."

█ However, I.C. 32–10–4–2 only requires the county to inspect these sites between January 1 and April 1, and, if it finds any growth which was not cut to a complying height in the previous calendar year, to give notice to the owner of the land upon which the obstruction is growing to cut or trim such obstruction. *See Wroblewski v. Grand Trunk Western Ry. Co.,* (1971) 150 Ind.App. 327, 276 N.E.2d 567. If the owner does not cut or trim the growth within ten days of the notice, the county must cut it to "the height of not to exceed five (5) feet".

I.C. 32–10–4–2 so provides:

"It shall be the duty of . . . the county highway superintendent . . . , between the first day of January and the first day of April each year to examine all hedge or live fences or other natural growth along the highways and such other obstructions as described in [§ 32–10–4–1] . . . and if there shall be any hedge or live fences or other growths or obstructions along such highways which have not been cut, trimmed down and maintained to the height of not to exceed five feet

[5'] in the last calendar year, immediately preceding the first day of January, they shall give the owner or owners thereof written notice to cut or trim such hedge or live fence . . . if such owner . . . do[es] not proceed to cut and trim . . . within ten (10) days thereafter . . . then such . . . county highway superintendent . . . shall immediately cause such fences to be cut or trimmed or obstructions or growths removed down to the height of not to exceed five feet [5'] . . . ."

There is evidence that the county was unfamiliar with the statute, had never inspected the curve or notified the landowner of any non-compliance. Additional evidence established that the growth in May exceeded eight to ten feet. However, there is no evidence of what height the growth was at the time the county was required to inspect it to establish non-compliance or a duty to trim it.

█ Even assuming that the county was negligent *per se* by violating the statute in not inspecting the curve, *Wroblewski, supra,* such negligence would provide no basis for liability because the breach of this statutory duty could not be the proximate cause of Hatton's injuries. The statute requires to cut the growth "to the height of not to exceed five (5) feet". The issue of proximate cause depends on the meaning of this phrase because the alleged cause of Hatton's injuries was the blind curve and the evidence indicated that cutting the growth to five feet would not have achieved an open view.

The county contends that the statute imposes a duty to trim the non-complying growth to a height of five feet. However, Hatton argues that it requires the growth to be cut to whatever height is necessary to remove the obstructed view because its goal is visual safety. In addition, Hatton argues that the statute should be strictly construed because it places a limitation on a common law duty. *Galbreath v. City of Indianapolis,* (1970) 253 Ind. 472, 255 N.E.2d 225.

While we recognize this principle, we still must ascertain and give effect to the intent

of the legislature. *Dague v. Piper Aircraft Corp.*, (1981) Ind., 418 N.E.2d 207. In doing so, we must give meaning to the language used, where that meaning is clear and unambiguous. Where the meaning of the statute is ambiguous, however, or where one or more constructions are apparently possible, we must construe the statute so as to arrive at the apparent intention of the legislature which is consistently revealed in all sections of the act, and consistent with all other statutes passed by the legislature. *Id.*

■ The statute, as originally enacted in 1891, specifically covered the cutting of hedge or other live fences. In 1891 visibility concerns were primarily focused upon the visibility of horses. In 1921 the statute was extended to cover "other obstructions" and in 1933 "other natural growth". No changes were made concerning the height requirement. In addition, I.C. 32–10–5–1 limits partition fences to "a height of not to exceed five feet". A fence of two feet or less would defeat the purpose of a fence. Therefore, to accept plaintiff's meaning would require elimination of live fences if they obstructed the view. If this were the legislative intent, they would have so stated. The language, used in its ordinary sense and consistent with other sections, indicates nothing more than a duty to cut any offending growth to five feet. The statute does not impose a duty to cut below five feet if necessary to open the view.

■ There is no evidence which establishes by inference or otherwise that the growth trimmed to five feet would have eliminated the visibility problems. In fact, the evidence indicates that a height somewhat below five feet would be necessary.[5] There being no evidence to establish the necessary element of proximate cause, the judge should not have submitted this issue to the jury.

Hatton failed to establish a prima facie case on a statutory duty and failed to produce evidence to support a finding of a common law duty under the instruction given. Because our decisions on these issues require a reversal we need not discuss the remaining issues.

Reversed.

MILLER, P. J., and SHIELDS, J. (sitting by designation), concur.

---

5. Testimony further suggests that trees would need to be trimmed. I.C. 32–10–4–2 does not impose a duty to trim trees in curves. Rather this duty extends to intersections of a highway with another highway or with a stream or interurban railroad. I.C. 32–10–4–1 and 2.