Roy M. ELDER, Plaintiff-Appellant,

v.

BOARD OF COUNTY COMMISSIONERS OF CLARK COUNTY, Indiana, Consisting of Larry R. Dean, Paul F. Garrett and Larry G. Coats, Defendant-Appellee.

No. 1–685A147.

Court of Appeals of Indiana, First District.

March 24, 1986.

Rehearing Denied May 12, 1986.

William F. Engebretson, Hanger, Engebretson & Mayer, Clarksville, for plaintiff-appellant.

Thomas W. Fox, Clarksville, for defendant-appellee.

NEAL, Judge.

### STATEMENT OF THE CASE

Plaintiff-appellant, Roy M. Elder (Elder), appeals from an adverse judgment in an inverse condemnation action against the Board of County Commissioners of Clark County (County).

We reverse.

### STATEMENT OF THE FACTS

Elder owns a tract of land described as relevant here, as follows:

"Being a tract of land in Illinois Grant No. 20, lying and being south of the Charlestown and New Albany Road and north of the B. & O. Railroad, commencing at the intersection of said roads and running thence westerly along the south side of Charlestown and New Albany Road a distance of 512 feet, more or less, to a stake...."

Elder's property, purchased by him in 1964, abutted the south side of a 20–21 foot wide roadway, apparently an ancient turnpike with an approximate origin of 1850. The property, containing Elder's residence, extended to the edge of the road as it was physically located on the ground. The front yard, roughly 38 feet in depth from the house to the roadway, contained large trees, shrubs, landscaping, and other indicia of ownership and occupation which indicated that the actual physical location of the property and the road had been settled many, many years prior to 1964. There is no evidence in any public record of a conveyance or condemnation, or of documents to create, locate or fix the width of the road, or of any public usuage of the road exceeding its previous 21 foot width.

In 1981, the County embarked upon a program to widen the road to 40 feet. After obtaining a provisional right of drainage and temporary construction easements from Elder, the County, without permission, easement, grant or condemnation, took approximately 15 feet of Elder's yard, cut down some of his trees and shrubs, and constructed and widened the road. All the above evidence is conceded.

Elder brought suit for inverse condemnation seeking damages arising from the taking. The court ruled adversely to him, stating that he had not proven the location of his property boundaries. We disagree.

## ISSUES

Upon appeal Elder raises the following issues:

I. Whether the trial court erred in finding that a taking of Elder's property did not occur during the Charlestown-New Albany Pike expansion.

II. Whether the trial court erred in finding that the northern boundary of Elder's property was ambiguous and indefinite.

## DISCUSSION AND DECISION

Issue I: *Whether A "Taking" Occurred.*

Appellant first contends that he met his statutory burden of proof regarding the establishment of a taking in an inverse condemnation action. Such an action involves a bifurcated procedure. First, a taking must be established, then, appraisers are appointed and damages assessed. *City of Hammond, Lake County v. Drangmeister* (1977), 173 Ind.App. 476, 364 N.E.2d 157, *trans. denied.* In order to establish a taking, the plaintiff must meet the test set out in IND. CODE 32–11–1–12: he must have an interest in the land; the land must either have been, or may be in the future, taken for a public use; and the land must not have been properly appropriated under law.

There is no question that the land in issue is currently servicing a public use as a public roadway. Likewise, there is no question that Elder owns the land in fee, though there is a dispute as to the exact location of its northern boundary. Thus the real issue is whether or not, at some point in time, the land was properly appropriated by the County. The County admits that no condemnation action was ever initiated to lawfully obtain the land. Rather it maintains that despite the fact that the road, prior to expansion, was 20 to 21 feet wide, a 40 foot right-of-way exists which enabled the County to expand the road 20 feet on either side of its centerline without constituting a taking. In support of its position the County presented evidence that its engineer had always thought that the road commanded a 40 foot right-of-way, and that everyone he knew thought the same thing. The county surveyor testified that he thought that the road initially had been a private turnpike and that every turnpike he knew of commanded a 40 foot

right-of-way. He also produced two survey maps; one, completed by the Baltimore & Ohio Southwestern Railroad Company in 1918, representing an area 1,000 feet away from Elder's property; and another one, completed by the state in 1923 and revised in 1932, representing an area over a mile away from Elder's property. Those survey maps do not seem to be any part of a public record, and apparently merely existed in his office. The surveys do not state that a 40 foot right-of-way existed, rather the surveyor arrived at that conclusion by making certain calculations. In addition, he refused to authenticate the accuracy of the surveys.

■ As we have so often stated, upon review we neither reweigh the evidence nor judge the credibility of the witnesses. *Connell v. State* (1984), Ind., 470 N.E.2d 701; *Johnson v. State* (1982), Ind.App., 441 N.E.2d 1015. Our duty is not to sit as a trial court, but rather to correct errors of law and accept the trial court's findings of fact so long as they are supported by probative evidence. *Melloh v. Gladis* (1974), 261 Ind. 647, 309 N.E.2d 433. Regarding probative evidence, our review is limited to ascertaining if there is any evidence, if believed by the trier of fact, which would sustain the judgment. *Blake v. Hosford* (1979), 180 Ind.App., 175, 387 N.E.2d 1335, *trans. denied.*

Two authorities exist which we believe are dispositive of this case. IND. CODE 8–20–1–15, the 20 year road law, provides as follows:

"(a) All county highways laid out before April 15, 1905, according to law, or used as such for twenty (20) years or more, shall continue as originally located and as of their original width, respectively, until changed according to law.

(b) From and after January 1, 1962, no county highway shall be laid out which is less than twenty (20) feet on each side of the centerline of said county highway, exclusive of such additional width as may be required for cuts and fills."

*Anderson v. City of Huntington* (1907), 40 Ind.App. 130, 81 N.E. 223 is a case nearly identical on its facts to the case at bar. The court, in ruling for the landowner, stated:

"That the Huntington and Goshen Road is a public highway, and was a public highway in front of appellant's property prior to the action of the city [sic] of Huntington in establishing Jefferson street [sic] thereon, cannot be controverted; but, its width and boundaries never having been established and determined by any competent authority, or recorded in any proper record, these boundaries must be determined by the use of the public. The way cannot be greater than the use. Where the boundary lines of a road have never been established by any competent authority, but the right of the public to travel over such road has been established by continuous usage, the width of such road is determined by the width of such use. *McCreery v. Fallis* [(1903)], 162 Ind. 255 [67 N.E. 673]; *Hart v. Trustees* [(1860)], 15 Ind. 226; *Board of Commissioners v. Huff* (1883)], 91 Ind. 333; *Epler v. Niman* [(1838)], 5 Ind. 459; Elliott, Roads and Streets (2d ed.), Sec. 376–386. And immemorial fence lines of adjoining property owners will overcome any legendary opinions as to where the lines were primarily intended to be.

\* \* \* \* \* \*

In the case before us, there was not a particle of evidence to show that the strip of ground appropriated by appellee that lay inside of the fence line of appellant was ever used by the public. On the contrary, the uncontradicted evidence clearly shows that the public never had used, but always had been excluded from, all that portion of appellant's lot that lay east of the fence forming the eastern boundary of the Goshen Road. It is true that, as a rule, occupancy of a street or road that has once been established by dedication, prescription or proper legal proceedings will not invest the occupant with title, or divest the public

of its rights in the way, although, as is shown in the case of *Hamilton v. State, supra,* [ (1885), 106 Ind. 361, 7 N.E. 9] under certain special circumstances, the public may be estopped from asserting these rights. But in the case before us there is no question of the occupancy of an established way. The Goshen Road, as established by the use of the public, and this is the only way it has ever been established, was wholly without the fence line of appellant. What lay east of that line belonged to appellant, and the public never had, and never acquired, any interest in it until appellee summarily wrested it from her, laid its sidewalk, and invited the public to enter.

\* \* \* \* \* \*

Witnesses were permitted to testify to their understanding or supposition as to how wide the Goshen Road was, all over the objections of appellant. This evidence was incompetent, under the circumstances of this case. The question was not how wide the Goshen Road was intended or supposed to be, but had the public ever acquired by dedication, prescription, or legal proceedings a right to use the strip of appellant's ground in question as a public way. Under certain conditions, ancient lines or locations may be established by reputation; but evidence that this road was supposed to be 60 feet wide, when the fences forming its boundary as far back as anyone can remember show it was much less than that, can hardly be said to have any pertinency to the issue in this case."

As noted, the physical location of the road on the ground, its width, and Elder's property as it existed on the ground in time immemorial is not disputed. We hold that upon the authority of IND.CODE 8-20-1-15 and *Anderson, supra,* Elder's title may not be defeated by the evidence adduced by the County. None of that evidence was recorded in a proper record which would be brought into Elder's abstract as notice of the County's claim of a 40 foot right-of-way. A contrary ruling would drastically disturb settled land titles.

We further hold that the County owned only that land physically occupied by the road and no more. Elder owned that land laying south of the southern edge of the road.

From what we have said there is no need to discuss Issue II. For all of the above reasons this cause is reversed and the trial court is ordered to grant a new trial and proceed in a manner not inconsistent with this opinion.

Judgment reversed.

ROBERTSON, P.J., and RATLIFF, J., concur.