**CONTEL OF INDIANA, INC.,**
Appellant–Defendant,

v.

**Lee COULSON, Beverly Coulson and Zoe Coulson, Appellees–Plaintiffs.**

No. 11A01–9503–CV–74.

Court of Appeals of Indiana.

Dec. 22, 1995.

Rehearing Denied Feb. 13, 1996.

David W. Sullivan, Cox, Zwerner, Gambill & Sullivan, Terre Haute, for appellant.

Max E. Goodwin, Mann, Chaney, Johnson, Goodwin & Williams, Terre Haute, for appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Contel of Indiana, Inc. ("Contel") appeals from the trial court's grant of partial summary judgment in favor of Lee Coulson, Beverly Coulson and Zoe Coulson (the "Coulsons") on the Coulsons' complaint for trespass. The Coulsons filed suit against Contel after Contel buried fiber optic telephone cable adjacent to a public roadway on property owned by the Coulsons. The parties filed cross-motions for partial summary judgment. Following a hearing, the trial court entered partial summary judgment in favor of the Coulsons and concluded, as a matter of law, that the State of Indiana has no right-of-way or easement beyond the traveled portion of the roadway.[1]

We affirm.

### ISSUE

The sole issue presented for our review is whether the trial court erred when it held that the State's right-of-way included only the traveled portion of the road.

### FACTS

The Coulsons own property in Sullivan County, the boundary of which extends to the center of State Road 63, which was formerly a county road. No fee or easement for a right-of-way was ever conveyed to the County or the State, but the motoring public has traveled along the roadway for many years. The Indiana Department of Transportation issued a permit to Contel to lay telephone cable in the State Road 63 right-of-way. In its permit, the State did not indicate the width of the right-of-way. Contel dug trenches and buried approximately two and one-half miles of fiber optic telephone cable along the road in areas which at all times were beyond the paved roadway.

The Coulsons filed their complaint against Contel for trespass seeking compensatory and punitive damages for Contel's conduct in burying the cable after the Coulsons had advised Contel that they owned the property in question. Contel moved for partial summary judgment and sought a ruling to determine the width of the State Road 63 right-of-way. The Coulsons filed a cross-motion for partial summary judgment. The trial court concluded that the State of Indiana's right-of-way easement over the Coulsons' property included only the traveled portion of the road, excluding any berm or shoulder and, thus, entered partial summary judgment in favor of the Coulsons. At Contel's request, and finding no just reason for delay, the trial court entered final judgment on its entry of partial summary judgment. Contel now appeals.

### DISCUSSION AND DECISION

#### Standard of Review

Summary judgment may be rendered upon less than all of the issues or claims. Ind.Trial Rule 56(C). In reviewing a trial court's ruling on a motion for summary judgment, the appellate court is required to apply the same standard applied by the trial court. *Farm Equip. Store, Inc. v. White Farm Equip. Co.* (1992), Ind.App., 596 N.E.2d 274, 275. Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that a party is entitled to judgment as a matter of law.

1. We heard oral argument on November 28, 1995, at Indiana State University in Terre Haute.

Ind.Trial Rule 56(C); *Lucas v. Stavos* (1993), Ind.App., 609 N.E.2d 1114, 1116, *trans. denied.* We resolve any doubt as to fact, or an inference to be drawn therefrom, in favor of the non-moving party. *Gilliam v. Contractors United, Inc.* (1995), Ind.App., 648 N.E.2d 1236, 1238, *trans. denied.*

■ The fact that both parties request summary judgment does not alter our standard of review. *Laudig v. Marion County Bd of Voters Registration* (1992), Ind.App., 585 N.E.2d 700, 704. Rather, "we must separately consider each motion to determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law." *Id.*

### Right-of-Way

■ Contel contends the trial court erred when it entered partial summary judgment in favor of the Coulsons. Specifically, Contel argues that the court erroneously concluded that the State's right-of-way covered only the traveled portion of the road, excluding the land adjacent to the paved road. We cannot agree.

■ State Road 63 is a former county road, the maintenance of which was assumed by the State many years ago. No public easement or right-of-way over the Coulsons' property has ever been conveyed by instrument or acquired by condemnation. As with most county roads, the property rights of abutting landowners extend to the center of the roadway subject only to an easement of the public to use the street or highway. *See Gorby v. McEndarfer* (1963), 135 Ind.App. 74, 82, 191 N.E.2d 786, 791 (citing Street, Indiana Title to Real Property, § 789). The Coulsons do not dispute that the State has a public road right-of-way over a portion of their property. The parties disagree, however, on the extent of that right-of-way.

Since there is no record indicating that the State has acquired a right-of-way over the Coulsons' property by purchase or condemnation, Indiana law dictates that the State Road 63 right-of-way must be determined by public use. In *Anderson v. City of Huntington* (1907), 40 Ind.App. 130, 81 N.E. 223, our supreme court recognized that the public

right-of-way "cannot be greater than the use" and stated:

> Where the boundary lines of a road have never been established by any competent authority, but the right of the public to travel over such road has been established by continuous usage, the width of such road is determined by the width of such use.

*Id.* at 133, 81 N.E. at 224; *see Evans v. Bowman* (1915), 183 Ind. 264, 267, 108 N.E. 956, 958. More recently, this court has recognized that the width of a road established by use is limited to that portion actually traveled and excludes any berm or shoulder. *Bd. of Comm'rs of Monroe County v. Hatton* (1981), Ind.App., 427 N.E.2d 696, 699. In *Hatton,* the plaintiff sought to establish that the County either owned or had assumed responsibility to maintain an area adjacent to a county road and had a corresponding common law duty in negligence in connection with the land. We noted that neither a record of county ownership of the adjacent areas nor any legal description of the road itself could be found, "which is a common situation for highways established by use." *Id.* at 699. Thus, we determined that there was no evidence to support a reasonable inference of County ownership or responsibility for the areas adjacent to the traveled portion of the roadway. *Id.*

Similar to the present case, in *Elder v. Bd. of County Comm'rs of Clark County* (1986), Ind.App., 490 N.E.2d 362, *trans. denied,* a landowner sued the County in inverse condemnation. The County had cut down trees and shrubs on the plaintiff's property adjacent to a public road in an attempt to widen the paved roadway from approximately 20 feet to 40 feet. The County asserted it had a 40 foot right-of-way in the area despite the fact that the width of the paved road had always been 20 feet. In *Elder,* we noted the longstanding Indiana precedent that the width of the right-of-way is determined by the public use. *Id.* at 364; *Anderson,* at 133, 81 N.E. at 224; *McCreery v. Fallis* (1903), 162 Ind. 255, 67 N.E. 673; *Bd of Comm'rs v. Huff* (1883), 91 Ind. 333; *Hart v. Trustees* (1860), 15 Ind. 226; *Epler v. Niman* (1854), 5 Ind. 459. Although the County produced the

testimony of the county surveyor and several survey maps in support of its claimed right-of-way, we held that the evidence presented by the County was insufficient as none was recorded in a proper record which would be brought into the landowner's abstract as notice of the County's claim of a 40 foot right-of-way. *Elder,* 490 N.E.2d at 365. We decided that a contrary ruling would drastically disturb settled land titles. *Id.*[2]

Here, we agree with the trial court and conclude that the State Road 63 right-of-way is coextensive with the paved roadway. There is no evidence to show that the public has ever "traveled" on the land adjacent to the roadway. *See Hatton,* 427 N.E.2d at 699. Neither the State nor the County has ever acquired a right-of-way to property adjacent to the roadway by conveyance or condemnation, and no additional right-of-way has been acquired by use. No markers have ever been placed on the Coulsons' property to show that the State claimed a right-of-way beyond the pavement. Indeed, when it granted Contel the permit to bury telephone lines, the State did not indicate the actual extent of its right-of-way. The State merely granted Contel permission to bury its telephone cable within the public road right-of-way, which we have determined includes only the paved road.

Still, Contel, a public utility which provides telephone service, maintains that the use of modern fiber optic cable creates a common good and that the State's grant of authority to Contel was sufficient to allow its utility installation along State Road 63. Contel cites several Indiana cases in support of its position, each of which is distinguishable from the instant case in that, the utility or governmental entity had established an easement or right-of-way over the property in question. In its argument, Contel circumvents the central issue of this appeal by assuming that its actions were done within the public right-of-way and with authority of the State. Where a fee is already subject to an easement for highway purposes, a utility

may use a public right-of-way without the consent of the servient landowner who claims that such utility work is an additional burden on the fee. *Ritz v. Indiana and Ohio R.R.* (1994), Ind.App., 632 N.E.2d 769, 775, *trans. denied.* Here, however, the public right-of-way extends only to the paved roadway. Contel received from the State's permit only those rights which the State had and no more. Therefore, Contel could not have obtained from the State, without the Coulsons' consent, authority to bury its cable beyond the traveled portion of State Road 63.

Finally, Contel asserts that the Coulsons have specifically recognized that the State has an easement beyond that of the roadway. Contel argues that the Coulsons have failed to object to prior acts by the State in mowing and maintaining the shoulder areas along the road on their property. The State's authority and responsibility to maintain public roads gives rise to an occasional need to enter the property adjacent to the traveled roadway to mow and to maintain ditches and culverts. Its authority, however, is not derived from an easement or right-of-way. Rather, the State's authority is based on an implied license to enter the land for a limited purpose.

Unlike an easement or right-of-way, a license merely confers a personal privilege to do some act or acts on land without conveying an estate in the land. *See Industrial Disposal v. City of East Chicago* (1980), Ind.App., 407 N.E.2d 1203, 1205. While an easement possesses the qualities of inheritability and assignability, these qualities are generally inconsistent with a license. *Id.* Further, use of land under a mere license cannot ripen into an easement, regardless of how long that use is continued. *Greenco, Inc. v. May* (1987), Ind.App., 506 N.E.2d 42, 46. The occasional, intermittent entry by the State on the property adjacent to the roadway merely to maintain areas appurtenant to the roadway did not establish a public right-of-way in those areas.

Based on the undisputed facts, we conclude that the State Road 63 right-of-way as

---

**2.** In *Elder,* this court further held that the County owned only that land physically occupied by the road and no more. *Id.* at 365. We note that in *Elder,* unlike here, the landowner's property line

did not extend to the center of the roadway. He had significantly fewer rights than do the Coulsons as he owned only that land lying south of the southern edge of the road.

established by public use extends only to the paved portion of the roadway. The trial court's partial summary judgment was correct on the issue presented by the cross-motions of the parties. However, a determination of the width of the State's right-of-way does not necessarily resolve the issue of whether Contel had an independent prescriptive right to bury its long distance cable on the Coulsons' property.

### Prescriptive Easement

A prescriptive easement is established by actual, open, notorious, continuous, uninterrupted, adverse use for 20 years under a claim of right, or by continuous adverse use with the knowledge and acquiescence of the servient landowner. *See* IND.CODE § 32-5-1-1; *Bauer v. Harris* (1993), Ind. App., 617 N.E.2d 923, 927. We agree with the Coulsons that the presence of other utilities in the area adjacent to the road does not establish an easement in favor of Contel. A prescriptive easement is limited to the purpose for which it is created and cannot be extended by implication. *Id.* at 931. However, it is undisputed that Contel had previously buried local telephone lines between State Road 63 and the Coulsons' fence or crop line prior to Contel's action of burying the fiber optic long distance lines.[3] Although the Coulsons maintain that they do not object to the local lines, in determining whether Contel has a prescriptive easement, we decline to recognize a distinction between its local cable and long distance cable.

It is unclear from the record how long the Contel local lines have existed on the Coulsons' property or the exact location of the local lines in relation to the new fiber optic cable.[4] At trial, it remains to be determined whether or not Contel or its predecessor in interest acquired a prescriptive easement for telephone lines over any part of the Coulsons' property.

We affirm the trial court's entry of partial summary judgment on the issue of the width of the State Road 63 right-of-way, noting, however, that genuine issues of material fact remain for trial concerning whether and, if so, where Contel may have acquired an easement by prescription.

Affirmed.

BAKER and GARRARD, JJ., concur.

---

3. The record also shows that Contel replaced some of the old local lines at the same time as it was burying the long distance lines.

4. The Coulsons assert that while Contel placed its long distance lines next to the pre-existing local line in some areas, in other areas the long distance cable is not even on the same side of State Road 63 as the pre-existing lines.