**Timothy JOHNSON, Linda Johnson, Arthur Johnson, and Beverly Johnson, Appellants–Petitioners,**

v.

**KOSCIUSKO COUNTY DRAINAGE BOARD, Elaine Wood and Lavon Wood, Appellees–Respondents.**

**No. 43A03–9109–CV–274.**

Court of Appeals of Indiana, Third District.

June 16, 1992.

Rehearing Denied July 29, 1992.

---

Douglas D. Small, Barnes & Thornburg, South Bend, for appellants-petitioners.

David C. Kolbe, P.C., Warsaw, for appellees-respondents.

STATON, Judge.

Timothy and Linda Johnson and Arthur and Beverly Johnson appeal from the trial court's amended judgment affirming the Kosciusko County Drainage Board (Board) designation of a subsurface drain on the property of Timothy Johnson and LaVon and Elaine Wood as a "regulated drain" under the Indiana Drainage Code, IND. CODE 36-9-27-1 *et seq.* (1988). The Johnsons raise the following consolidated and rephrased issues for our review:

I. Whether the determination of the Board, affirmed by the trial court, establishing a regulated drain is contrary to law.

II. Whether the trial court erroneously affirmed the Board decision under a flawed benefit/detriment analysis.

III. Whether establishment of the regulated drain without compensation to the Johnsons amounts to an unconstitutional taking of property.

Affirmed.

The subsurface drainage tile at the heart of this dispute originates on land owned by LaVon and Elaine Wood in Kosciusko County (Tract A). The tile, installed to drain excess surface water from the real estate, runs in a southeastern direction through Tract A and into property owned by Timothy and Beverly Johnson (Tract B). The tile continues in a southeasterly fashion until terminating at Sheely Lake, which is located entirely on Tract B. Art and Beverly Johnson own property (Tract C) that is contiguous to and south of Tract B. Wyland Lake, located almost entirely on Tract C, is connected to Sheely Lake by an overland spillway. The drainage tile was installed some time prior to 1957, when Tracts A and B were included in one larger parcel of real estate.[1]

In 1987, the Woods noticed that water had begun accumulating on their property where, prior to that time, the drain had effectively carried such water to Sheely Lake. The Woods then observed that soil had been piled in the area where the tile fed into Sheely Lake. The blockage of

water rendered much of the property in the surrounding area unsuitable for farming and livestock grazing. After an unsuccessful attempt to informally resolve the flooding problem, the Woods filed a petition with the Board to convert the "mutual drain" into a "regulated drain" pursuant to IC 36-9-27-19 so that the Board would assume jurisdiction over the drain. Once a drain is declared "regulated" the county becomes responsible for its repair and maintenance. *See* IC 36-9-27-34. After a hearing, the Board granted the Woods' petition. Soon afterward, the Johnsons sought review of the Board's decision in the Circuit Court of Kosciusko County. On April 23, 1991, the court vacated the Board's decision; however, after the Woods filed a motion to correct error, the court issued an amended judgment affirming the Board's decision granting the petition. The Johnsons now appeal.

Any owner of land affected by a final order or determination of the Board may have the order or determination set aside if it is arbitrary, capricious, unlawful, or not supported by substantial evidence. IC 36-9-27-106.

I.

*Establishment of Regulated Drain*

Under the statutes governing the actions of county drainage boards, a board may only convert a mutual drain into a regulated drain if it finds that:

(1) The owners of more than fifty percent (50%) in acreage of the affected land will be benefited if the drain is made a regulated drain under this chapter; and

(2) The benefit to owners benefited is likely to be greater than the damages to owners damaged by reason of the mutual drain being made a regulated drain[.]

IC 36-9-27-19. The Johnsons first contend that the Board's determination was unlawful because the Woods were unable to demonstrate that these statutory prerequisites were met. Much of the contention in this case centers around the construction of terms used in the statute. As the John-

1. Appended to this opinion is a diagram of the    area depicting the real estate in question.

sons note, the foremost objective in reviewing a statute is to determine and effect legislative intent. *Spaulding v. International Bakers Services, Inc.* (1990), Ind., 550 N.E.2d 307, 309. "Where possible, every word must be given effect and meaning, and no part is to be held meaningless if it can be reconciled with the rest of the statute." *Id.*

### A. "Affected Land"

■ The Drainage Code defines a number of terms pertinent to this case. For instance, the term "affected land" means "land within a watershed that is affected by the construction, reconstruction, or maintenance of a regulated drain." IC 36–9–27–2. A "watershed" is "an area of land from which all runoff water drains to a given point or that is affected by a small lake." *Id.*

■ Evidence before the Board indicates that the watershed is comprised of approximately 150 acres of land surrounding Sheely Lake to the east, west and north; that is, runoff water from roughly 150 acres of land drains into Sheely Lake. From this evidence the Johnsons assert that the Board must be reversed because there was no showing that owners of more than 50% of this area (or 75 acres) would be benefited by the establishment of the regulated drain. However, this approach disregards the meaning of "affected land" as that term is defined in the statute. The test does not require that owners of more than 50% of the acreage in the *watershed* be benefited; rather, the statute unmistakably refers to "affected land" as *land within a watershed that is affected by a regulated drain. See id.;* IC 36–9–27–19(c)(1). The uncontroverted evidence presented to the Board is that roughly 36 acres of land within the watershed is affected by the drain, and that most, if not all, of this real estate would be benefited by the proposal.[2]

The Johnsons assert that this result renders the pertinent provisions of the statute meaningless because the land to be drained will always be benefited more than damaged. However, the statute does not define "affected land" as that land within a watershed that is *drained* by a regulated drain; it is land within a watershed that a regulated drain will *affect* (whether by draining, flooding or otherwise). It is not difficult to envision a situation in which the construction of a regulated drain would do more harm than good. In those instances where owners of more than 50% of the affected land would not be benefited the Board could not grant the request to assume authority over the drain. *See* IC 36–9–27–19(c).

We are also unconvinced that the "affected land" includes Sheely Lake, Wyland Lake and the land surrounding them. While this property may be affected in the general sense of the word, our legislature has provided a specific meaning that precludes such an interpretation. *See Spaulding, supra,* at 309 (where it is declared in the statute that a term shall receive a certain construction, the courts are bound by that construction, even though the term would have a different meaning otherwise). By the terms of the statute, these properties are not components of the watershed at issue.

The Johnsons nonetheless posit that this area should be included under the alternate definition of "watershed," which also means "an area of land ... that is affected by a small lake." IC 36–9–27–2. Arguing that Sheely Lake is a "small lake," the Johnsons maintain that all the land within the Sheely Lake watershed should be considered "affected land." The statute supplies the following definition of a "small lake:"

... a lake, pond, or similar body of water that:

(1) Covers less than twenty (20) acres;

(2) Is surrounded by two (2) or more tracts of affected land that are under different ownership or a tract of land

---

2. By definition, the land within the 150 acre watershed drains to the given point, i.e., Sheely Lake. The 36 acres serviced by the proposed regulated drain merely carries surface water to that point in a more efficient manner, and thereby increases the acreage suitable for agricultural and other purposes.

that is owned by a not-for-profit corporation having more than one member;

(3) Is not constructed, reconstructed, or maintained under this chapter as part of an open drain;

(4) Is not a private crossing, control dam, or other permanent structure referred to under [IC 36–9–27–72];

(5) Is not owned by a state or any of its political subdivisions; and

(6) Is not designed and constructed primarily for reduction or control of pollutants or cooling before discharge of a liquid.

*Id.*' The parties disagree only as to the application of the second requirement, i.e., whether Sheely Lake is surrounded by two or more tracts of affected land that are under different ownership. The Woods contend that, because Sheely Lake is located entirely on Tract B (*see* diagram), the lake is not "surrounded" by two or more tracts in the sense intended by the legislature. On the other hand, the Johnsons urge this court to accept a broader definition of the term to include land in the vicinity affected by Sheely Lake.

Regardless of our interpretation of this term, the Johnsons' argument contains the same flaw as their contention above: that the entire watershed of 150 acres constitutes "affected land" for purposes of the statute. The uncontroverted evidence before the Board indicated that only 36 acres of land within the watershed would be affected by the conversion of the mutual drain to a regulated drain. The determination of the Board is not unlawful in this regard.

### B. "Mutual Drain"

■ As stated above, the Board must grant the request to convert a mutual drain to a regulated drain if the statutory requirements are satisfied. However, the Johnsons contend that the drain tile in question was not a mutual drain, and therefore, could not be made into a regulated drain under the statute. In support of their argument, they cite the definition of "mutual drain" as furnished by our legislature:

"Mutual drain" means a drain that:

(1) Is located on two (2) or more tracts of land that are under different ownership;

(2) Was established by the mutual consent of all the owners; and

(3) Was not established under or made subject to any drainage statute.

IC 36–9–27–2. The drain at issue clearly meets the first and third requirements for a mutual drain; however, the parties contest the applicability of the second provision. The drain was actually constructed by the common owner of Tracts A and B. Thus, opine the Johnsons, the drain was not "established" by the mutual consent of all the owners. The Woods contend that the drain became mutual when the common owner conveyed Tracts A and B to separate owners.

The Johnsons rely on *Suburban Homes Corp. v. Harders* (1980), Ind.App., 404 N.E.2d 629, *trans. denied* for the proposition that the Woods' drain may not be considered a mutual drain. This reliance is misplaced. In *Suburban Homes*, the appellant filed a "Petition To Make Mutual Drain A Legal Drain" under the statutory predecessor to IC 36–9–27–19. The mutual drain in *Suburban Homes*, however, consisted of a natural watercourse. Our court of appeals affirmed the trial court decision overturning the county drainage board's grant of the petition, concluding:

a mutual drain is an *artificial* drain, actually constructed, built or created by the mutual consent of the landowners through whose property it runs. Had an alternative meaning been intended, it surely would have been a simple matter for the drafters to have used the words "used by the parties with their mutual consent" or "improved by the parties to their mutual benefit."

404 N.E.2d at 632 (emphasis added).

Thus, while the drain in *Suburban Homes* was naturally created, the drain in the present case is an artificial drain, actually constructed, built or created by the landowner through whose property it ran. The question not before the court in *Suburban Homes*, and therefore not resolved in that case, was whether mutual consent

is required when a common owner installs a drain on property that is later subdivided into separate parcels. The question itself fairly supplies the answer. There is no dispute that an owner of real estate may install a drain tile on his or her property. Such would be a "private drain" under state law. *See* IC 36–9–27–2. However, once the owner sells off parcels of the common estate or otherwise subdivides the tract the private drain then becomes a mutual drain.

We believe that such a holding is mandated by the policy inherent in the Indiana Drainage Code, that of favoring the drainage of wet lands when the public welfare, health, or convenience is served thereby. *See Zigler v. Menges* (1889), 121 Ind. 99, 22 N.E. 782. Moreover, state laws furthering these purposes should be construed liberally to effectuate the intent of the legislature. *Righter v. Keaton* (1908), 170 Ind. 461, 84 N.E. 977. Surely the legislature did not intend to exclude whole classes of landowners whose predecessors actually built the drain. If such were the case, IC 36–9–27–18, authorizing the conversion of a mutual drain to a regulated drain when all affected landowners agree, would be rendered meaningless in every case where as few as one of the affected landowners was not even available to consent to the construction of the drain itself. As the Johnsons point out, it cannot be presumed that a legislature expects its enactments to be applied in an illogical or absurd manner, inconsistent with its underlying policies or goals. *Matter of Middlefork Watershed Conservancy District* (1987), Ind.App., 508 N.E.2d 574, 577, *reh'g denied.* We agree with the Board in this case that the drain shared by the Woods and the Johnsons was a mutual drain subject to the terms and conditions of IC 36–9–27–19.

## II.

### *Benefit/Detriment Analysis*

■ The Johnsons next argue that the Drainage Code is constitutionally defective for its failure to provide guidance or criteria to the parties and to the Board in assessing the benefits and detriments occa-sioned by the establishment of the regulated drain. The Woods respond that this case presents no due process violation.

In order to withstand a due process challenge,

such administrative decision-making must be done in accordance with previously stated, ascertainable standards. The standards should be written with sufficient precision to give fair warning as to what the agency will consider in making its decision. Ascertainable standards provide those persons having potential contact with the administrative body with fair warning of the criteria by which their petitions will be considered.

*Indiana Department of Environmental Management v. AMAX, Inc.* (1988), Ind. App., 529 N.E.2d 1209, 1212–13 (citations omitted). However, these standards need only be as specific as circumstances permit considering the purpose to be accomplished. *Natural Resources Commission v. Sullivan* (1981), Ind.App., 428 N.E.2d 92, 101.

Examining the statute at issue, IC 36–9–27–19(c), we conclude that this section provides fair warning of the criteria by which petitions will be considered. Section 19(c) requires the Board to grant the conversion petition if it finds that "owners of more than fifty percent (50%) in acreage of the affected land will be benefited" and such benefit "is likely to be greater than the damages to owners" by reason of the conversion. There is no mystery here; the parties submit evidence in support of their respective positions, and the Board, as factfinder, weighs the evidence accordingly. The Johnsons make no argument that the terms "benefit" or "damages" are so general that they lacked sufficient guidance to respond to the petition. As shown by their vigorous argument before the Board and their presentation of materials supporting their claim of damage to the land, the Johnsons were well aware of the evidence required to challenge the petition.

■ Nor are we persuaded that IC 36–9–27–112, which lists a number of factors for the Board to consider in specified actions under the Drainage Code, is indicative of a

legislative intent to require the Board to articulate its decision-making process with greater clarity.[3] By the express directive of our legislature, section 112 applies only to the assessment of costs for maintenance (IC 36–9–27–39), for reconstruction and damages (IC 36–9–27–50), and for the establishment of a new drain (IC 36–9–27–62). The Board used the analysis prescribed by the general assembly, and this analysis is not violative of the parties' due process rights.

## III.

### *Unconstitutional Taking Without Compensation*

■ For their final allegation of error, the Johnsons contend that the establishment of a regulated drain without compensation would amount to an unconstitutional taking of property. The Woods disagree, arguing that the regulated drain would cause mere incidental damage to the Johnsons' property, itself not sufficient to constitute a taking.

The Johnsons cite the federal and state constitutions in support of their argument. The Indiana Constitution reads in relevant part:

No person's particular services shall be demanded, without just compensation. No person's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered.

IND. CONST. art. I, § 21. In addition, the U.S. Constitution prohibits the taking of private property for public use without just compensation. U.S. CONST. amend. V. Nonetheless, we are not persuaded that the Johnsons have established a taking in this case.

Generally, a "taking" involves:

an actual interference with, or disturbance of property rights, which are not merely consequential, or incidental injuries to property or property rights, as distinguished from prohibition of use, or enjoyment, or destruction of interests in property.

*School Town of Andrews v. Heiney* (1912), 178 Ind. 1, 7, 98 N.E. 628, 630.

As discussed in Issue I, *supra*, the drain at issue existed long before the Johnsons purchased their property. Conversion of this mutual drain to a regulated drain works no additional taking of the property, save that incidentally required by the county to enter upon the land to repair and maintain the drain. Although the Johnsons are correct in their statement that state law grants the county an easement of up to 75 feet on either side of the drain for repair and maintenance purposes,[4] the minimal and infrequent intrusions contemplated in this case are incidental. Moreover, the Johnsons have presented no evidence that they will be unable to use the property in some fashion, and even acknowledge that

---

3. Section 112 states:
  (a) In determining benefits to land under sections [36–9–27–39, 36–9–27–50, and 36–9–27–62], the board *may* consider:
    (1) The watershed affected by the drain to be constructed, reconstructed, or maintained;
    (2) The number of acres in each tract;
    (3) The total volume of water draining into or through the drain to be constructed, reconstructed, or maintained, and the amount of water contributed by each land owner;
    (4) The land use;
    (5) The increased value accruing to each tract of land from the construction, reconstruction, or maintenance;
    (6) Whether the various tracts are adjacent, upland, upstream, or downstream in relation to the main trunk of the drain;
    (7) Elimination or reduction of damage from floods;
    (8) The soil type; and
    (9) Any other factors affecting the construction, reconstruction, or maintenance.
  (b) In determining benefits or damages to land under sections 39, 50, and 62 of this chapter, the board *may* examine aerial photographs and topographical or other maps, and *may* adjourn the hearing to the site of the construction, reconstruction, or maintenance in order to personally view the affected land.
  IC 36–9–27–112 (emphasis added). It is clear that this section, which by definition does not pertain to actions under IC 36–9–27–19, does not even compel the Board to consider these factors (as indicated by the use of the permissive word "may"). We note, however, that the Board had before it evidence of the above factors relevant to this case.

4. IC 36–9–27–33.

they may plant crops and erect permanent structures with the approval of the Board. *See* IC 36–9–27–33(d). In fact, as the Board found, conversion of the drain would benefit that portion of the Johnsons' land affected thereby. While the Johnsons may decry the desirability of such a benefit, it is a benefit to the land nonetheless. Therefore, they may not successfully claim that the establishment of the regulated drain would be an unconstitutional taking without compensation. *See Bemis v. Guirl Drainage Co.* (1914), 182 Ind. 36, 105 N.E. 496 (drainage laws are not an exercise of the power of eminent domain, but of the state's police power, which does not demand that compensation be made as a condition to its rightful exercise); *Heick v. Voight* (1886), 110 Ind. 279, 11 N.E. 306 (where proposed drain will be of public utility, construction of drain is not in conflict with constitutional provisions against taking private property without just compensation).

The trial court is affirmed.

RATLIFF, C.J., and HOFFMAN, J., concur.