WORLDCOM NETWORK SERVICES, INC., Appellant–Plaintiff/Counter–Defendant,

v.

Darryl THOMPSON and Sonja Thompson, Appellees–Defendants/Counter–Plaintiffs.

No. 32A04–9705–CV–196.

Court of Appeals of Indiana.

Sept. 4, 1998.

V. Samuel Laurin, III, George T. Patton, Jr., Andrew M. McNeil, Bose McKinney & Evans, Indianapolis, for Appellant–Plaintiff/Counter–Defendant.

James O. McDonald, Everett Everett & McDonald, Terre Haute, Max E. Goodwin, Bruce D. Aukerman, Mann Law Firm, Terre Haute, for Appellees–Defendants/Counter–Plaintiffs.

## OPINION ON REHEARING

NAJAM, Judge.

On March 23, 1998, this court issued its memorandum decision in an interlocutory appeal initiated by WorldCom Network Services, Inc. ("WorldCom"). The appeal was from the trial court's denial of WorldCom's request to enjoin Darryl and Sonja Thompson ("Thompsons") from severing or removing fiber optic cable in a disputed area along Baltimore Road in Morgan County. In our decision, we addressed three issues:

1. Whether the preliminary injunction requested by WorldCom should issue;

2. Whether the trial court erred when it determined that an order issued by the Morgan County Board of Commissioners was not properly recorded; and

3. Whether the trial court erred when it concluded that WorldCom had failed to produce evidence which established the location of the Baltimore Road right-of-way.

We first held that a change of circumstances had obviated WorldCom's claim of irreparable harm, a condition for injunctive relief, and that an injunction should not issue. We also held that a 1913 order by the Morgan County Commissioners was properly recorded in the commissioners' order book maintained by the Morgan County Auditor. Finally, we held that the right-of-way can be measured accurately from the current centerline of Baltimore Road.

The Thompsons now petition for rehearing, oral argument on rehearing and, in the alternative, for publication of our decision. In its brief, WorldCom joins the Thompsons in their request that our memorandum decision be published but otherwise disputes the petition for rehearing and for additional oral argument. WorldCom also argues that the petition for rehearing and supporting brief filed by the Thompsons contain "a scandalous, impertinent and disrespectful attack" on this court and that we should strike the entire petition and brief. The Thompsons respond with their own motion to strike WorldCom's brief on the grounds that it "intentionally and repeatedly misrepresents the facts of record and disregards established rules of appellate practice."

The Thompsons insist that our decision misstates the record. They further contend that our holding concerning the location of the disputed right-of-way was based on evidence not before the trial court and not properly before this court. They also argue that our decision alters and establishes a rule of law and involves issues of substantial public importance and, thus, that in issuing a memorandum decision we did not follow the criteria for publication enumerated in Indiana Appellate Rule 15(A)(2). Finally, the Thompsons allege they were denied due process because, they maintain, there is a much greater chance that transfer will be granted from a published opinion than from a memorandum decision. We shall address each of these contentions in turn.

### Facts and Procedural History

WorldCom is a long distance telecommunications company that operates as a public utility in Indiana under a certificate of authority from the Indiana Utility Regulatory Commission. WorldCom offered to purchase the right to install its fiber optic cable on the Thompson property along Baltimore Road, but the Thompsons declined. WorldCom then obtained a permit from the Morgan County Highway Department for "Underground Transmission Devices on County Right of Way." The permit was valid only for work within the Morgan County highway right-of-way, and the permittee was required to "secure consent by easement or other legal document from abutting property owners for work performed outside the Highway right of way." While the permit did not describe the right-of-way with any certainty, WorldCom buried its cable in ground along Baltimore Road on the Thompson property. The Thompsons objected to installation of the cable.

WorldCom subsequently filed a complaint seeking a preliminary injunction to prohibit the Thompsons from disturbing the cable. The trial court denied the injunction, finding that WorldCom's actions constituted a trespass. The court further denied WorldCom's request for a stay pending appeal, stating that WorldCom knew or should have known

that the consent of the landowner was required and that WorldCom did not act in good faith when it buried its cable on the Thompson property.

WorldCom then took an interlocutory appeal, and this court entered a stay pending appeal. However, the appeal was terminated and the case was remanded to the trial court for consideration of additional evidence. *See* footnote 9, *infra.* Shortly thereafter, and before the next hearing, the cable was severed.[1] The parties disputed whether our order terminating the appeal had lifted the stay previously entered and, thus, whether Darryl Thompson could be charged with contempt for having allegedly violated the stay. *See Worldcom Network Services, Inc. v. Thompson,* 684 N.E.2d 211 (Ind.Ct.App. 1997), *opinion vacated,* 694 N.E.2d 1125 (Ind.1998). At some point, WorldCom abandoned the cable and installed a new cable in another location.

WorldCom took a change of venue from Morgan County. After another evidentiary hearing, the second trial court confirmed the first trial court's order, entered additional findings and conclusions and denied World-Com's request for a preliminary injunction. WorldCom then brought this interlocutory appeal.

## DISCUSSION AND DECISION

### I. Motions to Strike

■ The issues in this appeal are hotly contested, and we respect vigorous advocacy. However, some of the Thompsons' contentions on rehearing are inappropriate. While the Thompsons profess to hold this court in "high esteem," significant parts of their petition and brief are condescending and permeated with sarcasm and disrespect. By way of illustration, they allege that our decision, if not corrected, "can only lead to ridicule, if not contempt, for this Court by the Thompsons and their many friends and neighbors," and that "[t]oo many citizens are already cynical, if not contemptuous, of the judiciary." They assert that our decision contains "glaringly incorrect statements of supposed fact" which are "obviously wrong." They imply that the court lacks experience in real estate matters.

The Thompsons also accuse the court of writing "with pens filled with the staining ink of innuendo," allege that portions of our decision give "the appearance of bias, prejudice and impropriety" and argue that "the decision will remain as a blemish on the record" of the court if those portions are not retracted. They assert that if this court were to disagree with a certain finding "it would be ridiculous," and they question the court's good faith and ethics. They demand an "apology" from the court. At one point, in rhetorical high gear, the Thompsons warn the court against reaching a particular conclusion and declare that such a ruling would be "blatantly erroneous."

Portions of the Thompsons' brief on rehearing present cogent argument. However, the strident and offensive tenor of the remaining portions interferes with this court's due deliberation on the merits of those issues which the Thompsons ask us to consider on rehearing. Their overheated rhetoric is unpersuasive and ill-advised.[2] Righteous indig-

---

1. After the cable was cut, WorldCom could not claim a threat of irreparable harm since the harm had already been done. It is undisputed that Darryl Thompson had threatened to remove WorldCom's equipment from his property. In our memorandum decision, we stated that the Thompsons had severed WorldCom's cable and criticized that conduct. We stated that if there was any doubt as to whether a stay from this court was in effect, the Thompsons should have requested clarification before damaging the cable. On rehearing, the Thompsons complain vehemently that our statements are *dicta* in that the question of who cut the cable was not an issue before us. However, in a colloquy at oral argument, when this court specifically asked counsel why his client had cut the cable, counsel did not deny his client's responsibility for it or suggest that the inquiry was not germane to the appeal. While this precise question was not before us for decision, it was relevant to the appeal because the irreparable harm requirement for the preliminary injunction was obviated when the cable was cut. We stand by our position that self-help is ill-advised when the very object of self-help is the subject of pending litigation in which the rights of the parties have not been fully adjudicated.

2. " 'One rule of thumb when writing a brief is that there shouldn't be anything [in the brief] that is not calculated to persuade the reader.' " Mark Hansen, *It Didn't Please the Court,* ABA

nation is no substitute for a well-reasoned argument. We remind counsel that an advocate can present his cause, protect the record for subsequent review and preserve professional integrity by patient firmness no less effectively than by belligerence or theatrics. *See* Comment, Ind. Professional Conduct Rule 3.5. Judges and attorneys are engaged in a common enterprise and have a joint obligation and privilege to improve the legal order. Louis H. Pollak, *Professional Attitude*, ABA JOURNAL, Aug. 1998, at 67. The incivility manifested in the Thompsons' petition and brief corrodes the judicial system. *See id.*

In *State v. Hoovler*, 673 N.E.2d 767 (Ind. 1997), our supreme court struck portions of a petition for rehearing and supporting brief, noting, "Striking scandalous or impertinent material has been a part of Indiana practice since long before adoption of our present trial rules." *Id.* at 768; *see also* Ind. Trial Rule 12(F). In this case, the offensive material is so interwoven with legitimate argument that we have considered striking the entire submission. We have chosen instead to strike only the inappropriate portions of the Thompsons' petition and brief because we do not believe the Thompsons should be denied consideration of their petition due to the excessive zeal of their attorneys. Those portions are hereby stricken, and counsel are admonished that the use of impertinent material disserves the client's interest and demeans the legal profession.

## II. Issues on Remand

█ We now turn our attention to the Thompsons' principal contentions in their petition for rehearing. As previously stated, we held that a change in circumstances had obviated WorldCom's claim of irreparable harm. However, we went on to address other issues presented in the appeal which are likely to recur on remand. The Thompsons now allege that we improperly issued an advisory opinion and, thus, erred in considering other issues. Given the posture and history of this case, we cannot agree.

This court has previously addressed issues which were not dispositive of the appeal but were likely to appear on remand. *See, e.g., Irvine v. Irvine*, 685 N.E.2d 67, 71 (Ind.Ct. App.1997); *Lueder v. NIPSCO*, 683 N.E.2d 1340, 1346 (Ind.Ct.App.1997), *trans. denied; Brant v. Custom Design Constructors Corp.*, 677 N.E.2d 92, 100 (Ind.Ct.App.1997); *Barrett v. State*, 675 N.E.2d 1112, 1119 (Ind.Ct. App.1996); *State ex rel. Med. Licensing Bd. v. Stetina*, 477 N.E.2d 322, 327 (Ind.Ct.App. 1985). In addition, this is not a case where the issues were raised for the first time on appeal. *Cf. Green v. Green*, 447 N.E.2d 605, 610 (Ind.Ct.App.1983). In our memorandum decision, we considered only issues briefed and argued by the parties before the trial court, which the trial court considered and ruled upon and which were fully briefed and argued on appeal. We found error in the trial court's findings which would be repeated on remand if left uncorrected.

Indiana Appellate Rule 15(N) provides that this court may order the trial court to amend or correct its findings and that a judgment may be affirmed on conditions. Although we affirmed the trial court's judgment, we were not obliged to adopt or approve its findings. A trial court finding that is not supported by or is contrary to the evidence may be reversed on appeal if clearly erroneous. App. R. 15(N). The rules further allow us to order findings amended or corrected and to grant any other appropriate relief. App. R. 15(N)(4). In the present case, we addressed issues squarely presented so that the case may be tried and concluded on remand without yet another appeal on the same issues.

In the allocation of trial and appellate functions, we have exercised proper authority in addressing these issues. Moreover, this dispute has now been before six judges and two different panels of the court, and there have been four oral arguments. Under these circumstances, we think judicial economy is a valid consideration, and we reject the Thompsons' contention that we improperly issued an advisory opinion.

JOURNAL, May 1988, at 20 (quoting Monroe Freedman, professor of legal ethics at Hofstra University School of Law).

## III. 1913 Order

■ The trial court found that there was no record putting the Thompsons or their predecessors in title on notice of a 30–foot wide county road right-of-way because such notice was not recorded with the Morgan County Recorder. The court further found that the right-of-way is limited to the width of the paved road. In our memorandum decision, we addressed the significance of a 1913 order by the Morgan County Board of Commissioners concerning the disputed right-of-way. We held that the order, located in the board of commissioners' order book on file with the Morgan County Auditor, is a public record binding on the Thompsons. The Thompsons contend that this court erred in concluding that the commissioners' 1913 order was properly recorded. They also argue that our conclusion contravenes Indiana precedent, is without supporting authority and "fundamentally changes the face of title searches throughout this state." We disagree with each contention.

### A. Proper Public Record

#### 1. *1905 Highway Act*

■ In this case, the commissioners voted to improve an existing public highway as provided under the 1905 Highway Act, 1905 Ind. Acts 167 (later codified at Indiana Code §§ 8–20–1–1 to 8–20–1–72) ("the Act").[3] The Act required that the order laying out a highway "shall specify the width thereof" and that the commissioners "shall have power to cause such roads ... to be ascertained, described and entered *of record.*" 1905 IND. ACTS 167, § 15 (later IND.CODE § 8–20–1–15) (emphasis added).[4] The Act does not define

"of record." However, the Thompsons assert that the phrase can only refer to the office of the county recorder.

■ Our foremost objective in construing a statute is to determine and to give effect to the intent of the legislature. *Spaulding v. International Bakers Services, Inc.,* 550 N.E.2d 307, 309 (Ind.1990). When reviewing a trial court's determination on statutory construction, we are not bound by the court's interpretation, but rather must make an independent legal determination as to the meaning of the statute and its application to the instant facts. *Olejniczak v. Town of Kouts,* 651 N.E.2d 1197, 1199 (Ind.Ct.App. 1995), *trans. denied.* The reviewing court must examine the structure of the statute as a whole. *Spangler v. State,* 607 N.E.2d 720, 723 (Ind.1993). Statutory provisions covering the same general subject matter are *in pari materia* and should be construed together to produce a harmonious statutory scheme. *Olejniczak,* 651 N.E.2d at 1199.

■ The term "record" or "of record" appeared in various sections of the 1905 Highway Act. For instance, the Act required the county auditor to make a record of the commissioners' proceedings. *See* 1905 IND. ACTS 167, § 80 (later IND.CODE § 8–20–1–70) (repealed 1989) ("The county auditor shall make a complete record of such proceedings in making such improvements.").[5] Section 21 indicated that "of record" referred to the order book of the board of commissioners, maintained by the auditor. 1905 IND. ACTS 167, § 21 (later IND.CODE § 8–20–1–21) (repealed 1989). The Act also provided that the reports of engineers and viewers were to be filed and maintained in the office of the

3. Specifically, the order provided that "[t]he right-of-way shall be 30' wide" and that "[t]he road bed shall be 20' wide measured at right angles to the centerline of the roadway."

4. Section 15 of the Act provided in full:

All highways heretofore laid out according to law, or used as such for twenty years or more, shall continue as located and as of their original width, respectively, until changed according to law; and hereafter *no highway shall be laid out less than thirty feet wide,* and the order for the laying out of the same shall specify the width thereof. The board of commissioners

shall have power to cause such of the roads used as highways as shall have been laid out, but not sufficiently described, as such as have been used for twenty years, but not recorded, to be ascertained, described and entered of record.
(emphasis added).

5. A public record is one required by law to be kept, or necessary to be kept, in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done. *Gallagher v. Marion County Victim Advocate Program, Inc.,* 401 N.E.2d 1362, 1365 (Ind.Ct.App.1980).

auditor, and that the commissioners were to "cause any supplemental reports ... to be spread of record." 1905 IND. ACTS 167, § 69 (later IND.CODE § 8–20–1–60) (repealed 1989). Finally, the Act stated that the "petition and report and all records and matters pertaining to" proposed new or existing public highways *"may be found at the office of [the] auditor."* 1905 IND. ACTS 167, § 70 (later IND.CODE § 8–20–1–61) (repealed 1989) (emphasis added).

■ To justify judicial interpretation, a statute must be unclear or ambiguous. *Morgan County Rural Elec. Membership Corp. v. Indianapolis Power & Light Co.*, 260 Ind. 164, 302 N.E.2d 776, 778 (1973). The 1905 Highway Act included some seventy-two sections which described in detail the procedure to be followed in the location, relocation and vacation of county highways. The language is clear and unambiguous. *Id.* There is no reference in the entire Act to the county recorder while there are numerous references to the auditor's responsibility to make and maintain the commissioners' records under the Act. Based on our consideration of the entire Act, we hold that "of record" referred to the order book of the board of commissioners maintained by the county auditor who acted then, as now, as the clerk of the commissioners. *See* IND.CODE §§ 36–2–2–11 and 36–2–9–7.

### 2. *General Recording Statute*

■ Still, the Thompsons argue that Indiana's general recording statute, Indiana Code § 32–1–2–16, applies to the commissioners' order. The statute provides:

Every conveyance or mortgage of lands, or any interest therein, and every lease for more than three years, *shall be recorded in the recorder's office* of the county where such lands shall be situated; and every conveyance or lease not so recorded within forty-five days from the execution thereof, shall be fraudulent and void against any

subsequent purchaser ... in good faith and for a valuable consideration.

(emphasis added). The statute refers to the conveyance, mortgage or lease of lands but does not require that a public highway right-of-way established by law be recorded in the recorder's office. If the legislature had intended to extend the recording requirement to include highway rights-of-way established by law, it could have done so. *Cf. Morgan County Rural Elec. Membership Corp.*, 260 Ind. at 164, 302 N.E.2d at 778. No such intent should be inferred from the statute's silence on the matter. *Id.* at 164, 302 N.E.2d at 778.

■ There is a presumption that the legislature in enacting a particular piece of legislation is aware of existing statutes on the same subject. *Wayne Township v. Lutheran Hosp.*, 160 Ind.App. 427, 312 N.E.2d 120, 124 (1974). The general recording statute pre-dates the 1905 Highway Act. Further, when general and specific statutes conflict in their application to a particular subject matter, the specific statute will prevail over the general statute. *Id.* Likewise, a more recent expression of the legislature generally prevails over an older one. *County Council of Bartholomew County v. Department of Pub. Welfare of Bartholomew County*, 400 N.E.2d 1187, 1190 (Ind.Ct.App. 1980). Here, while the general recording statute is silent about highway rights-of-way, the subsequently enacted 1905 Highway Act specifically prescribed the manner in which county highway rights-of-way were to be established and recorded with the auditor. We conclude that the general recording statute does not apply to roads established by law under the 1905 Highway Act.[6]

### B. Indiana Case Law

#### 1. *State v. Anderson*

The Thompsons also accuse this court of ignoring *State v. Anderson*, 241 Ind. 184, 170

---

**6.** In 1990, the Indiana legislature added the following section to the Indiana Code:

Whenever a right-of-way or easement for a state, county, or municipal highway is acquired, an accurate description of all rights-of-way and easements shall be filed in the office of the recorder of the county in which the real property is located. The description shall be

recorded in the deed records of the county. The county recorder may not charge a fee for filing and recording the description.

IND.CODE § 8–23–23–1. However, this statute has only prospective application. *See Chesnut v. Roof*, 665 N.E.2d 7, 9 (Ind.Ct.App.1996) (absent strong or compelling reasons, statutes will normally be given prospective application).

N.E.2d 812 (1960). However, as we noted in our memorandum decision, and now reaffirm, *Anderson* is inapposite. That case concerned the grant of easements for a state highway right-of-way executed in a private transaction. The easements were filed with the State Highway Department but were not recorded with the county recorder. Our supreme court criticized the conveyance as a "secret grant" and held that the right-of-way was not enforceable against the grantor's successor. *See also State v. Cinko,* 155 Ind. App. 357, 292 N.E.2d 847 (1973) (unrecorded instrument granting right-of-way to State invalid against subsequent purchasers).

■ Here, there was no private conveyance or secret grant but instead public action taken to create the right-of-way. The Thompsons contend this is "a distinction without a difference." We think not. County highways can be established in this state by order of the board of county commissioners, by express grant or by public use. *See Holcraft v. King,* 25 Ind. 352, 358 (1865). In this case, there was no grant, no deed or other instrument of conveyance and no grantor or grantee. Rather, the Morgan County Board of Commissioners followed the statutory procedure when they considered the petition to improve Baltimore Road, which had been signed by more than fifty freeholders, as required by the Act. *See* IND. ACTS 167, § 63 (later IND.CODE § 8–20–1–54) (repealed 1988). The commissioners ordered that the road, as described in the petition and in the report of the viewers and engineer, be improved, finding that the petition was "in all things sufficient as required by law." The commissioners also ordered the auditor "to spread said petition of record."

### 2. *McRoberts v. Vogel*

The case of *McRoberts v. Vogel,* 100 Ind. App. 303, 195 N.E. 417 (1935), is persuasive

authority. In *McRoberts,* as here, a public highway was laid out by legal proceedings but was not fully occupied by the public. Adjacent property owners then erected houses and constructed fences within the right-of-way. The court held that "occupancy of a road established by legal proceedings will not invest an occupant with title nor divest the public of its rights" and that "it must be presumed that appellant and her grantors are presumed to know that the law decreed [the] road to be 100–feet wide and that such law had not been repealed." *Id.* at 306–07, 195 N.E. at 419.

■ The *McRoberts* court also found *Anderson v. City of Huntington,* 40 Ind.App. 130, 81 N.E. 223 (1907), another case relied upon by the Thompsons, inapplicable because, "In [Anderson] the width had never been established by law."[7] *McRoberts,* 100 Ind.App. at 308, 195 N.E. at 419. Significantly, the *McRoberts* court concluded:

The appellant here cannot say that she did not have knowledge of the limits of this highway *as the record of the commissioners who established . . . [the] road is considered knowledge of the limits thereof.* *Id.* at 309–10, 195 N.E. at 420 (emphasis added). The court recognized that property owners are charged with constructive notice of the commissioners' records establishing a county road. Similarly, we hold that the Thompsons had constructive notice of the 1913 order on file with the county auditor.

### C. Title Searches

The Thompsons assert that the court misunderstands the purpose behind the recording statute and that our opinion, if not reversed, "will lead to absurdity and wreak havoc upon present day title searches." We cannot agree.

The recorder's office is not the only public office required to maintain records affecting

7. The Thompsons direct us to a line of authority, including, *Anderson v. City of Huntington,* 40 Ind.App. at 130, 81 N.E. at 223; *Elder v. Board of County Comm'rs of Clark County,* 490 N.E.2d 362, 363 (Ind.Ct.App.1986), *trans. denied; Board of Comm'rs of Monroe County v. Hatton,* 427 N.E.2d 696 (Ind.Ct.App.1981); and *Contel of Indiana, Inc. v. Coulson,* 659 N.E.2d 224 (Ind.Ct. App.1995), *trans. denied,* for the proposition that

a right-of-way neither established by law nor properly recorded is limited to its traveled portion. However, that line of cases is inapposite here where the commissioners laid out the road and its dimensions in the manner provided by law and properly recorded their action with the county auditor as prescribed under the 1905 Highway Act.

the title to real estate. As such, a complete title search is not confined to the records of the county recorder. Although actual practice may vary somewhat from county to county, an abstractor or title insurance agent will routinely examine records affecting title to real estate in the offices of the recorder, auditor, assessor, treasurer, sheriff and clerk of the courts in the county where the real estate is located. The auditor is required to maintain plats that exhibit the ownership, and transfer books that show the conveyance, of each parcel of real property. *See* IND. CODE §§ 6–1.1–5–1 and 6–1.1–5–4. Under the 1905 Highway Act, the auditor was also required to maintain a complete record of the statutory creation of highway rights-of-way in proceedings before the county commissioners. IND.CODE § 8–20–1–70 (repealed 1989).

Across Indiana there are numerous highway rights-of-way established by boards of county commissioners. The Thompsons' position, if adopted, would eliminate many of them. We do not think the legislature would have adopted a specific statute, which empowered county commissioners to lay out, establish and improve public highway rights-of-way, only to have the public interest and investment in those projects extinguished by operation of the general recording statute.

### D. Holding

In sum, we hold that the commissioners' 1913 order was properly recorded in the office of the county auditor. Neither the general recording statute nor Indiana case law demands a contrary result. It is undisputed that the Thompsons took title to their property by deed expressly "[s]ubject to easements, restriction and *rights-of-ways of record* and observable." (emphasis added). They are charged with constructive notice of the 1913 order.

### IV. Location of the Right–of–Way

 The trial court found no evidence establishing where a 30–foot right-of-way would be located with respect to the Thomp-

son property and the centerline of the present-day paved road. The court also found no evidence that the centerline of the present road, from which WorldCom took measurements, is on the section line, or that the center of any improvement possibly made under the 1913 order would have been centered on the section line.[8] As stated in our memorandum decision, we disagree with those findings.

The Thompsons own a 20.63 acre tract which includes 665.38 feet of frontage on Baltimore Road. It is undisputed that this frontage is located on the section line between Sections 23 and 24 in Gregg Township. The commissioners' plan included the following description of the route of the road over and upon which the improvements would be located:

> Beginning at a point—411' west of the Southeast corner of Section 26, Township 13 North, Range 1 West, in Morgan County, Indiana, and running thence East 411'; thence North, 5497'; thence North 10° east 893½'; thence north 2 West 1358'; thence North 4 West—1189½'; *thence North 1743½', being a total distance of 11,092' and terminating at the intersection of Monroe and Gregg Township line.*

(emphasis added). The last call of the commissioners' survey legal description, North 1743½ feet, is the same section line between Sections 23 and 24 in Gregg Township that forms the Thompsons' west boundary. The commissioners' plan provided that "[t]he centerline of the right of-way shall follow along and coincide with the centerline of the road as described" in the commissioners' records. The commissioners' survey of the road existing when the improvements were authorized described the location of the road on the section line.

Absent evidence to the contrary, the best evidence of where the road existed in 1913 is where the road exists today. The plat map

---

8. The trial court also found that there were no monuments marking a right-of-way and no evidence that the public has traveled an area wider than the existing paved road. However, the county was not required to improve all 30 feet of the right-of-way. When a highway has been established by law, the highway remains in the public domain even where a portion of it has not been used or improved. *Brown v. Hiatt,* 16 Ind. App. 340, 344, 45 N.E. 481, 482 (1896). There are few, if any, highways in the state that are actually used to their extreme width. *Id.; Sims v. City of Frankfort,* 79 Ind. 446, 450 (1881).

of Gregg Township, Plaintiff's Exhibit "8A" admitted without objection, shows that Baltimore Road is located on the section line between Sections 23 and 24, which forms the Thompsons' west property line. More specifically, the location of the existing road is confirmed by Defendant's Exhibit "C," a survey of the Thompson property which was offered and admitted through Darryl Thompson during the hearing on the preliminary injunction before the Morgan Superior Court. On direct examination, Thompson testified that his property runs to the center of Baltimore Road, that he was present when the survey was done and "the pins are still in the center of the road." The survey itself shows that the west line of the Thompsons' property, the centerline of Baltimore Road and the section line are one and the same, described in the Thompson survey as the West line of Section 24, Township 13 North, Range 1 West.[9]

■ The Thompsons' position is disingenuous, given that both their own survey and Darryl Thompson's testimony on direct examination establish that the public right-of-way can be measured from the centerline of Baltimore Road in its present location. They should not be permitted to maintain one position before the trial court and a contrary position on appeal. *See Barga v. Indiana Farmers Mut. Ins. Group, Inc.*, 687 N.E.2d 575, 577 (Ind.Ct.App.1997) (judicial estoppel prevents party from assuming position in legal proceeding inconsistent with one previously asserted), *trans. denied.*

The evidence clearly shows that the centerline of Baltimore Road is one and the same as the section line described it the 1913 commissioners' survey, which is one and the same line as the western boundary of the Thompson tract. We hold that the trial court's finding that there is "no evidence to show where the 30–foot right-of-way would be located with respect to the Thompson property and the center line of the present day paved road" is unsupported by the evidence and, thus, clearly erroneous. We reaffirm our holding that the right-of-way described in the commissioners' 1913 order can be measured accurately from the current centerline of Baltimore Road.

**V. Due Process**

■ Finally, we hold that the Thompsons' due process rights were not violated when this court issued a memorandum decision rather than a published opinion. *See* Ind. Appellate. Rule 15(A). The Indiana Constitution provides the right to one appeal, which is to the Court of Appeals. IND. CONST. art. 7, § 6. There is no constitutional right of transfer to our supreme court. Regardless, the court grants petitions to transfer from both memorandum decisions and published opinions.

**VI. Conclusion**

The Thompsons characterize this case as part of a larger battle between WorldCom, "a multi-billion dollar corporation" and property owners "across the state of Indiana." They contend that WorldCom caused this dispute when it violated the law and sought to take property it wanted without paying for it. We do not see the case in such narrow terms. Rather, the primary issue presented by this case is whether, as the Thompsons contend, a

9. Darryl Thompson's testimony and Exhibit C were included in the record of the proceedings filed in the first interlocutory appeal, from the Morgan Superior Court. As previously noted, the case was transferred from Morgan County to Hendricks County during the pendency of that appeal. Pursuant to this court's remand order that the trial court consider any new evidence and "such other evidence that the parties shall present in determining whether to grant a preliminary injunction," WorldCom moved to introduce a certified copy of the record, together with other documents associated with the first appeal, as Plaintiff's Exhibit 1. The trial court denied the motion, explaining that the exhibit did not contain "new evidence."

WorldCom has included the exhibit in the record filed in this appeal and argues that the trial court erred in refusing it. We need not decide that issue. The record of the proceedings, including Thompson's testimony and Exhibit C, from the Morgan Superior Court were already part of the trial record. Upon transfer from Morgan County, the case was given a new Hendricks County cause number, but the record remained one and the same. Thus, the record did not need to be introduced into evidence to be considered either by the trial court or this court. We could issue a writ of certiorari for yet another copy of the Morgan County record of proceedings, but that would be a redundant exercise.

public highway right-of-way established under the 1905 Highway Act is "fraudulent and void" if the commissioners' order creating the right-of-way is recorded with the county auditor but not with the county recorder. *See* IND.CODE § 32–1–2–16. All other issues before this court are secondary.

The record indicates that the improvements authorized by the 1913 order were postponed due to insufficient "bonding power." We remand this case to the trial court to determine whether the right-of-way was completed under the 1905 Highway Act, or established by public use, taking into account (1) the 1913 order, (2) any subsequent records kept by the auditor under the Act relevant to the part of Baltimore Road in question here, and (3) whether Indiana Code §§ 8–20–1–16 and 8–20–1–71 apply to the facts in this case.

The petition for rehearing is granted. This opinion on rehearing shall modify and supersede our memorandum decision. The petitions to publish the memorandum decision and request for further oral argument are denied.

BAKER and RILEY, JJ., concur.