John T. MATTINGLY, Appellant–
Plaintiff,

v.

WARRICK COUNTY DRAINAGE
BOARD, Appellee–Defendant.

No. 82A01–9912–CV–414.

Court of Appeals of Indiana.

March 13, 2001.

Leslie C. Shively, Evansville, IN, Attorney for Appellant.

David Sauvey, John B. Drummy, Eric D. Johnson, Evansville, IN, Attorneys for Appellee.

## OPINION

HOFFMAN, Senior Judge.

Plaintiff–Appellant John T. Mattingly appeals the grant of summary judgment in favor of Defendant–Appellee, the Warrick County Drainage Board, and the denial of his motion for partial summary judgment. Mattingly raises four issues, which we reorder and restate as:

1. Whether the trial court properly considered affidavits submitted by the Drainage Board in support of its motion for summary judgment.

2. Whether Ind.Code § 36–9–27–33 creates a seventy-five foot right-of-way over Mattingly's property.

3. Whether Mattingly purchased the relevant property subject to the right-of-way.

4. Whether the Drainage Board's denial of Mattingly's request to build a permanent structure on the right-of-way qualifies as an unconstitutional taking of property without compensation.

We affirm.

On August 9, 1995, Mattingly purchased approximately 3.10 acres of land in Warrick County on which he planned to construct eight buildings containing 457

mini-storage units.[1] To that end, Mattingly had the property rezoned, and he secured conditional use and commercial driveway permits. When Mattingly hired an engineering firm to complete the building permit process, he learned that a "regulated drain"[2] abuts the western border of his property and that his construction project encroached upon the right-of-way associated with the drain. Mattingly asked the Drainage Board to reduce the right-of-way to twenty-five feet, but the Board would only decrease the encumbrance to fifty feet. Complying with that decision, Mattingly could build only 318 units.

On March 18, 1998, Mattingly filed a four-count complaint against the Drainage Board alleging, *inter alia,* an unconstitutional taking. The Drainage Board moved for summary judgment on all issues, and Mattingly moved for partial summary judgment on the taking issue. Mattingly also moved to strike portions from the affidavits of County Surveyor Michael Irvin, submitted by the Drainage Board in support of its motion. The trial court denied the motions to strike, granted the Drainage Board's motion for summary judgment, and denied Mattingly's motion for partial summary judgment. This appeal followed.

■ In this case, the trial court entered specific findings of fact and conclusions thereon, which are neither required nor prohibited in the summary judgment context. *City of Gary v. Indiana Bell Tel. Co.,* 732 N.E.2d 149, 153 (Ind.2000). Although specific findings facilitate our review of summary judgment rulings, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *I/N Tek v. Hitachi, Ltd.,* 734 N.E.2d 584, 587 (Ind.Ct.App.2000), *trans.*

*denied.* Rather, when we review the grant or denial of a summary judgment motion, this court stands in the shoes of the trial court. *Long v. Dilling Mechanical Contractors, Inc.,* 705 N.E.2d 1022, 1024 (Ind. Ct.App.1999), *trans. denied.* We liberally construe all designated evidentiary material in the light most favorable to the nonmoving party and determine whether there is a genuine issue of material fact for trial. *I/N Tek,* 734 N.E.2d at 587. The party that lost in the trial court has the burden to persuade the appellate court that the trial court erred. *Id.*

■ Here, Mattingly argues that the trial court erred when it denied his motions to strike portions of two affidavits submitted by the Drainage Board in support of its motion for summary judgment. In the first, County Surveyor Michael Irvin verified: "The regulated drain at issue in this case was designated as such prior to September 1, 1984." (R. 112). Mattingly claims that Irvin has no personal knowledge that the drain in question was a regulated drain. Mattingly also objects to Irvin's second affidavit, which reads:

1. I am the duly elected Surveyor of Warrick County, Indiana, and have personal knowledge of the facts set forth in this affidavit.

2. Attached to this Affidavit is Exhibit A as a true and exact copy of the records of the Warrick Circuit Court dated September 10, 1887, relating to the petition by owners of certain property for the establishment by Warrick County of a legal or regulated drain along the western edge of Warrick County. These documents also show that the petition was granted and the drain constructed by the County. The originals of Exhibit A are in my possession.

---

1. It appears that a corporation owned by Mattingly actually purchased the property but, for purposes of this appeal, we assume that Mattingly is the proper party.

2. A regulated drain is defined by the Indiana Drainage Code as "an open drain, a tiled drain, or a combination of the two." Ind.

Code § 36–9–27–2. Once a drain is declared "regulated," the county becomes responsible for its repair and maintenance. *Johnson v. Kosciusko County Drainage Bd.,* 594 N.E.2d 798, 800 (Ind.Ct.App.1992) (citing Ind.Code § 36–9–27–34), *trans. denied.*

3. The regulated drain that was established in 1887 is the same ditch that forms the western boundary of the property owned by John Mattingly Homes, Inc.

4. All of the drains and ditches in the southwest part of the County, including the one at issue here, are collectively referred to as the "Weinsheimer Water Shed."

5. Prior to 1970, drainage matters in Warrick County were handled by a drainage court presided over by a judge. Beginning in 1970, Warrick County instituted the current form of the Drainage Board. In one of its first meetings on April 10, 1970, the Board discussed appropriating money for the repair and maintenance of the "Weinsheimer Water Shed," which would include the drain at issue in this case. A copy of the minutes of this meeting [is] attached as Exhibit B to this affidavit.

6. On August 14, 1970, the drainage board approved the realignment, repair and maintenance of the ditches and drains in the "Weinsheimer Water Shed." A copy of these minutes [is] attached hereto as Exhibit C.

7. To my knowledge, the County has exercised control over the drain in this case ever since it was constructed by the County in 1887. This control, and the drain's status as a regulated drain, was reaffirmed in 1970.

(R. 305–06). Mattingly challenges Paragraphs 2 and 3, asserting that Irvin was neither qualified to authenticate the 1887 court document under Ind. Trial Rule 44(A) nor to conclude that the drain established in 1887 is the same drain that abuts his property.

 Mattingly does not object to Paragraph 7, in which Irvin also verified the drain's status as a regulated drain since 1887. Mattingly cannot predicate error on cumulative evidence. *See Campbell v. Shelton*, 727 N.E.2d 495, 502 (Ind.Ct. App.2000). In any event, Ind.Code § 36–9–27–29 denominates Irvin "the technical authority" regarding regulated drains. *See infra.* As such, he has personal knowledge regarding the nature and history of the regulated drain. With respect to the 1887 order itself, authentication under T.R. 44(A) generally requires that an officer having custody of the record to attest, by testimony or by certification, that the offered document is the official original or a true and accurate copy thereof. *Lucre Corp. v. County of Gibson*, 657 N.E.2d 150, 155 (Ind.Ct.App.1995), *trans. denied, cert. denied*, 519 U.S. 950, 117 S.Ct. 362, 136 L.Ed.2d 253 (1996). Irvin attested that the document is a true and accurate copy of the original order in his possession. There is no reversible error.

 Mattingly also contends that the Drainage Board has, at best, a right-of-entry over a seventy-five feet area, "nothing more than a license," and a separate right-of-way, or easement, limited to the actual dimensions of the drainage ditch itself.[3] Thus, Mattingly asserts that the Drainage Board could prevent the construction of permanent structures only "from the top of one bank [of the ditch] to the top of the other bank."

The relevant statute provides in part:

(a) The county surveyor, the board, or an authorized representative of the surveyor or the board acting under this chapter has the *right of entry* over and upon land lying within seventy-five (75) feet of any regulated drain. The seventy-five (75) foot limit shall be measured at right angles to:

(1) the center line of any tiled drain; and

---

**3.** A license merely confers a personal privilege to do some act or acts on land without conveying an estate in the land. *Contel of Indiana, Inc. v. Coulson*, 659 N.E.2d 224, 228 (Ind.Ct.App.1995), *trans. denied.* An easement possesses the qualities of inheritability and assignability, but these qualities are generally inconsistent with a license. *Id.*

(2) the top edge of each bank of an open drain; as determined by the surveyor.

(b) Spoil bank spreading resulting from the construction, reconstruction, or maintenance of an open drain may extend beyond the *seventy-five (75) foot right of way* if:

(1) the county surveyor finds that the extension is necessary; and

(2) the extension has been provided for in the engineer's report on the construction, reconstruction, or maintenance.

(c) All persons exercising the right given by this section shall, to the extent possible, use due care to avoid damage to crops, fences, buildings, and other structures outside of the *right-of-way,* and to crops and approved structures inside the *right-of-way* . . . .

(d) The owners of land over which the *right-of-way* runs may use the land in any manner consistent with this chapter and the proper operation of the drain. Permanent structures may not be placed on any *right-of-way* without the written consent of the board. Temporary structures may be placed upon or over the *right-of-way* without the written consent of the board, but shall be removed immediately by the owner when so ordered by the board or by the county surveyor. Crops grown on a *right-of-way* are at the risk of the owner, and, if necessary in the reconstruction or maintenance of the drain, may be damaged without liability on the part of the surveyor, the board, or their representatives. Trees, shrubs, and woody vegetation may not be planted in the *right-of-way* without the written consent of the board, and trees and shrubs may be removed by the surveyor if necessary to the proper operation or maintenance of the drain.

Ind.Code § 36–9–27–33 (emphases added).

It is true, as Mattingly points out, that subsection (a) describes a seventy-five foot "right-of-entry." Nevertheless, subsection (b) expressly refers to a "seventy-five (75) foot right-of-way." A plain reading of the statute shows that the legislature intended to create both a seventy-five foot right-of-entry and a seventy-five foot right-of-way, or easement. *See Johnson v. Kosciusko County Drainage Bd.,* 594 N.E.2d 798, 804 (Ind.Ct.App.1992) (describing Drainage Board's interest as "an easement of up to 75 feet on either side of the drain for repair and maintenance purposes"), *trans. denied; see Grover v. Frantz,* 408 N.E.2d 567 (Ind.Ct.App.1980) (discussing seventy-five foot right-of-way in context of predecessor statute). Under subsection (d), permanent structures may not be placed on the seventy-five foot right-of-way without the written consent of the Drainage Board.

▮▮▮▮ Next, Mattingly asserts that, even if there is a seventy-five foot right-of-way, he did not purchase his property subject to the Drainage Board's interest because he had no notice of its existence. Specifically, Mattingly claims that IC § 36–9–27–33 does not inform him there is a regulated drain on *his* property. In addition, he insists that the Drainage Board's right-of-way was not "of record."[4]

This court discussed a nearly identical argument in *WorldCom Network Servs., Inc. v. Thompson,* 698 N.E.2d 1233 (Ind. Ct.App.1998), *trans. denied.* There, WorldCom offered to purchase the right to bury a fiber optic cable on property owned by Darryl and Sonja Thompson. After the Thompsons declined, WorldCom obtained

---

4. Mattingly also claims that the regulated drain was not discoverable upon inspection and, thus, he had no actual knowledge of its existence. Resolution of that matter is not necessary to our decision, and we need not address it. Separately, Mattingly introduces a new issue: whether the Drainage Board's easement is void under Ind.Code § 32–1–5–3. Because Mattingly did not raise that issue in the trial court, he has waived its review. *See Bicknell Minerals, Inc. v. Tilly,* 570 N.E.2d 1307, 1311 n. 1 (Ind.Ct.App.1991), *trans. denied.*

a permit from the Morgan County Highway Department to use the county highway right-of-way. WorldCom then buried its cable along the roadway, on the Thompsons' property. *Id.* at 1235. The Thompsons objected, and WorldCom sought to enjoin them from disturbing the cable. In denying the injunction, the trial court found that WorldCom's actions constituted a trespass. *Id.* After remand from an interlocutory appeal, a second trial court confirmed the previous order, concluding that there was no record putting the Thompsons on notice of the county highway right-of-way because the interest was not recorded with the Morgan County Recorder. *Id.* at 1238.

On appeal, this court held that a 1913 order, located in the board of commissioner's order book on file with the Morgan County Auditor, was a public record binding on the Thompsons. *Id.* The Thompsons sought rehearing, challenging our conclusion that the order was properly recorded and arguing that our holding would fundamentally change title searches in this state. *Id.*

On rehearing, we focused on the nature and origin of the easement. We also examined the general recording statute, Ind. Code § 32–1–2–16, and the subsequently enacted 1905 Highway Act, noting that the former is silent about highway rights-of-way. *Id.* at 1239. In contrast, the Highway Act made numerous references to the auditor's responsibility to make and maintain the commissioners' records. *Id.* Ultimately, we concluded that the general recording statute applies to the "conveyance, mortgage or lease of lands" but not to a public highway right-of-way "established by law." *Id.; cf. State v. Anderson,* 241 Ind. 184, 170 N.E.2d 812 (1960) (holding that purchaser did not take property subject to unrecorded easement created by private agreement).

Here, the easement associated with the regulated drain is a creature of statute and, as in *WorldCom,* was created by public action rather than by private agreement. Ind.Code § 36–9–27–29 designates the county surveyor as the "technical authority" on the construction, reconstruction, and maintenance of all regulated drains or proposed regulated drains in the county. Specifically, the county surveyor shall:

(1) investigate, evaluate, and survey all regulated drains or proposed regulated drains, and prepare all reports, plans, profiles, and specifications necessary or incident to any proposed construction, reconstruction, or maintenance of regulated drains;

(2) prepare and make public standards of design, construction, and maintenance that will apply to all regulated drains and their appurtenances, taking into consideration in preparing these standards the published recommendations made by Purdue University, the American Society of Agricultural Engineers, the American Society of Civil Engineers, the United States Department of Agriculture, the [D]epartment of [N]atural [R]esources, the United States Army Corps of Engineers, and other reliable sources of information;

(3) supervise all construction, reconstruction, and maintenance work performed under this chapter;

(4) catalog and maintain a record of all surveying notes, plans, profiles, and specifications of all regulated drains in the county, and of all mutual and private drains when available; . . . .

*Id.*

Under the statute, the county surveyor is the custodian of the records pertaining to regulated drains, including the location of drains. The statute does not require the county surveyor to record regulated drains with the county recorder. In his affidavit, County Surveyor Michael Irvin stated that he kept a list of all regulated drains; and that he maintained maps showing the location of regulated drains. He also held the 1887 Warrick Circuit Court order establishing the drain. Those

records are public and provide constructive notice of the regulated drain. Mattingly purchased the property subject to the Drainage Board's interest.

 In a related argument, Mattingly maintains that his property was taken for public use without just compensation, in contravention of the United States and Indiana Constitutions.[5] This court has previously held that the establishment of a regulated drain without compensation does not qualify as an unconstitutional taking of property. *Johnson*, 594 N.E.2d at 804–05. Mattingly attempts to avoid that result by claiming that the taking in this case occurred, not when the regulated drain was established, but when the Drainage Board refused to permit construction of permanent structures on the easement.[6] In support of his argument, Mattingly relies solely upon a statement in *Johnson* that, generally, a taking involves "an *actual* interference with, or disturbance of property rights, which are not merely consequential, or incidental injuries to property or property rights...." *Id.* at 804 (quoting *School Town of Andrews v. Heiney*, 178 Ind. 1, 7, 98 N.E. 628, 630 (1912)).

*Johnson* does not stand for the proposition that a taking occurs each time a party asserts its property rights. *Johnson* dealt with the creation of a regulated drain, and we held that the establishment of such worked no additional taking of property "save that incidentally required by the county to enter upon the land to repair and maintain the drain." *Id.; see Bemis v. Guirl Drainage Co.*, 182 Ind. 36, 105 N.E. 496 (1914) (holding that compensation need not be made as condition to exercise of drainage law rights). No unconstitutional taking occurred when the Drainage Board prohibited construction of mini-storage facilities upon its right-of-way.

In sum, the designated evidence indicates that Mattingly took his property subject to the statutory seventy-five foot right-of-way and that no unconstitutional taking occurred when the Drainage Board enforced its right to prohibit the construction of mini-storage units on the easement. Given that there was no genuine issue of material fact, the Drainage Board was entitled to summary judgment as a matter of law. The trial court properly granted the Board's motion and denied Mattingly's cross-motion.

Affirmed.

NAJAM and BROOK, JJ., concur.

---

**5.** The United States Constitution provides: "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amend. V. Article I § 21 of the Indiana Constitution reads: "No person's property shall be taken by law, without just compensation...."

**6.** The Drainage Board actually reduced its easement from seventy-five feet to fifty feet. In effect, Mattingly argues that a taking occurred when the Board refused to narrow the easement further.